A. NEWBOLD MORRIS, as President of the Council, and A. NEWBOLD MORRIS and Others, as Members of the Council, Created under the New York City Charter, Plaintiffs, *v.* JOHN CASHMORE and JAMES A. BURKE, Defendants.

First Department, April 14, 1938.

*William C. Chanler* of counsel [*Leo Brown* with him on the brief; *William C. Chanler, Corporation Counsel*, attorney], for the plaintiffs.

*Alfred J. Talley* of counsel [*E. Ivan Rubenstein* and *George Rosling* with him on the brief; *Rubenstein & Rosling*, attorneys], for the defendant John Cashmore.

*Peter M. Horn*, for the defendant James A. Burke.

CALLAHAN, J. At the general election held in November, 1937, twenty-six councilmen were chosen to constitute the council of the city of New York. The council met for the first time on January 3, 1938. At that meeting twenty-five councilmen and the president attended, the twenty-sixth member being absent.

Section 29 of the New York City Charter (hereinafter referred to as " the Charter ") provides:

" § 29. A majority of the councilmen shall constitute a quorum. The president of the council shall preside over the meetings of the council and shall have the right to participate in the discussions of the council but shall not have a vote except in case of a tie. The council shall elect from among the councilmen a vice-chairman, who shall possess the powers and perform the duties of the president of the council when the president is absent or while he is acting as mayor, or when a vacancy occurs in said office, and he shall, during such times, retain his right to vote and shall be a member of every board of which the president of the council is a member by virtue of his office."

Section 30 of the Charter provides, among other things: " The council shall determine the rules of its own proceedings."

The council proceeded to nominate candidates for the office of vice-chairman and to ballot upon the nominees. The journal of the council shows that

" Councilman Spellman placed the name of Councilman Cashmore in nomination. Seconded by Councilman Deering.

" Councilman Conrad nominated Councilman James Burke for vice-chairman. Seconded by Councilman Christensen.

" Councilman Hollander nominated Councilman B. Charney Vladeck. Seconded by Councilman Earle."

The stenographer's minutes of this meeting show that the motion nominating Councilman Cashmore recited that he was being named for the years 1938 and 1939, the full term for which members of the council were elected. Upon the roll call Mr. Cashmore received thirteen votes; Mr. Vladeck, nine votes; and Mr. Burke, three votes.

Although there was present a quorum, consisting of twenty-five members, and Mr. Cashmore received the votes of thirteen members, the chair ruled that this was insufficient for the election of Mr. Cashmore. On appeal from said ruling to the body, the vote was twelve votes to sustain the chair, and thirteen votes against. The chair, nevertheless, held that the vote was insufficient to override his ruling.

Thereafter nominations were made of eight members to constitute the rules committee of the council for the years 1938–1939 On the roll call on the appointment of the rules committee, thirteen votes were cast for the motion, and ten against, two not voting. The chair ruled that the motion was lost, due to a lack of sufficient votes. Upon appeal from the ruling of the chair, twelve votes were cast to sustain the ruling and thirteen against. The chair, nevertheless, announced that his ruling had been upheld.

Thereafter, despite the rulings of the chair, a report was presented by the committee on rules previously nominated. The report contained proposed rules of the council for the years 1938–1939 and designated a committee on finance for a like term. Upon motion, duly seconded, that the report be received and the rules adopted, the roll call showed thirteen votes in favor of the motion, and twelve against. The chair ruled that the motion was lost due to a lack of sufficient votes. Upon appeal to the body, the chair again ruled that the appeal was lost due to lack of sufficient votes, although the vote stood thirteen to twelve against sustaining the chair.

Like procedure was had as to the designation of the committee on finance.

The correctness of the foregoing rulings is the main question presented on these appeals.

The parties concede that the general rule applicable to parliamentary bodies is that, when a quorum is present, the act of the majority of the quorum is the act of the body, except so far as the terms of the organic law under which the body is assembled limit that rule. (See *United States* v. *Ballin*, 144 U. S. 1, 6.)

The election of a vice-chairman, the appointment of committees, and the adoption of rules, being steps in the organization of the body, are acts which the majority of the quorum had the power to perform, unless such power was abridged by statute.

It is contended that limitation on this power is found in section 34 of the Charter and in section 41 of General Construction Law. Section 34 of the Charter provides:

" Vote Required for Local Law or Resolution.

" § 34. No local law or resolution shall be passed except by at least the majority affirmative vote of all the councilmen."

Obviously, the election of a vice-chairman, or the adoption of rules, are not matters requiring the passage of a local law. Nor do they appear to be matters required to be carried out by resolution.

Section 29 of the Charter provides for the " election " of a vice-chairman. There is no requirement that such election be consummated by the adoption of a resolution. An election is ordinarily carried on by balloting, thus permitting the expression of a choice among several nominees. That method was followed here. The passage of a resolution would be determined either by counting the ayes and noes, or by ascertaining an expression of views by *viva voce* vote. Members would be limited, if a resolution was presented, to expressing either approval or disapproval of a single nominee. If such a limitation was intended, the broad power to elect would not be conferred.

The power to veto all resolutions is conferred on the mayor by section 38 of the new Charter. We think it is clear that it was never intended that the mayor of the city of New York was to have the power of veto over such matters as the election of a vice-chairman, appointment of committees, or the adoption of rules by the council.

We have examined the decisions cited by counsel concerning the meaning of the word " resolution " and the statutes involved in those cases. No precedent is found among them relating to the election of a presiding officer, to the selection of committees or to the adoption of rules of a legislative body.

In *People ex rel. Ennis* v. *Schroeder* (76 N. Y. 160) the question presented was whether the appointment of a clerk to a justice of the peace of the city of Brooklyn was valid without the sanction and approval of the mayor. It was provided by statute that any justice of the peace had the power to nominate a clerk, with the consent of the common council. The common council consisted of the mayor and the board of aldermen. The mayor was vested with authority to veto any resolution. An appointment was made by a resolution which was sent to the mayor and vetoed by him. The situation involved in the ratification by resolution of the appointment made by another corporate officer is not analogous to an election by the council of its own presiding officer.

In *People ex rel. Kehoe* v. *Fitchie* (76 Hun, 80) the appointment of a supervisor to fill a vacancy was involved. The appointment was made by resolution which was presented to the mayor, who vetoed the appointment. The General Term affirmed on the opinion of CULLEN, J., at Special Term, where that learned justice said that the power to fill vacancies in the office of supervisor was not legislative, but executive. CULLEN, J., held, however, that

by the weight of controlling authority construing the statutes applicable, the mayor of the city of Brooklyn could veto such an appointment. No other question was decided.

It would seem clear from the foregoing that the acts involved herein were not " resolutions " within the meaning of section 34 of the Charter.

This brings us to the question as to whether section 41 of the General Construction Law applies. The material parts of that section read as follows:

" § 41. Quorum and majority. Whenever three or more public officers are given any power or authority, or three or more persons are charged with any public duty to be performed or exercised by them jointly or as a board or similar body, a majority of all such persons or officers * * * may perform and exercise such power, authority or duty, and if one or more of such persons or officers shall * * * refuse or neglect to attend any such meeting, a majority of the whole number of such persons or officers shall be a quorum of such board or body, and a majority of a quorum, if not less than a majority of the whole number of such persons or officers may perform and exercise any such power, authority or duty."

The application of the General Construction Law is limited by section 110 thereof to " every statute unless its general object, or the context of the language construed, or other provisions of law indicate that a different meaning or application was intended from that required to be given by this chapter."

In so far as the definition of the word " quorum " is concerned, it is plain that section 41 has no application, for the reason that " quorum " is defined in the Charter, and not left open to construction. In so far as the powers of the majority of a quorum are concerned, we hold that section 41 of the General Construction Law does not limit the right of the city council to act by a majority of a quorum in those intra-cameral matters with which we are concerned. The object of the Charter in creating a city council and the provisions contained therein relating to its powers, indicate that no such limitation was intended to apply to a quorum of the council.

It was the common-law rule that, when the power to act was conferred by statute upon several persons, all were required to meet before the power could be exercised. The purpose of section 41 of the General Construction Law was to change that rule. We find no case in which section 41 was applied to limit the power of a quorum of a local legislative body. We doubt that it was intended

to apply to elected representatives who act in their individual capacity, and not as a body.

The history of the office of vice-chairman in the former legislative bodies of New York city shows that a similar office was first created in 1884. Prior to that time the president of the board of aldermen was chosen by the affirmative vote of a majority of the aldermen present and constituting a quorum. (Consolidation Act [Laws of 1882, chap. 410], § 71.) By chapter 74 of the Laws of 1884 the president's office was made elective by the people, and provision was made that the board of aldermen should from their own board " choose a vice-president in the manner now provided by law for choosing a president of said board." This was an express enactment that the vice-president was to be chosen by the affirmative vote of the majority of those present constituting a quorum.

In the various charters in effect between 1884 and the adoption of the present Charter provision was made for the choice of a vice-chairman by the members of the local legislative bodies. In no instance was there any requirement that such election be by a majority of all the members. If such a change was intended to be made in the new Charter, we believe that it would have been plainly indicated by express language specifying such requirement.

Examination of chapter 2 of the Charter, relating to powers of the council, shows that in a great many instances where a particular number of votes is required for the performance of those powers, such requirement is expressly specified.

Taking into consideration the history of the provisions contained in the former charters and the fact that in the present Charter we find many instances where a particular number of votes is specified, we conclude that in omitting any similar specification as to the election of a vice-chairman the new Charter intended that general parliamentary rules were to apply.

We, accordingly, hold that a majority of a quorum of the council were empowered to elect a vice-chairman, to appoint committee members, and to adopt rules, and the casting of thirteen votes in the meeting of January 3, 1938, was sufficient to accomplish these steps.

The question is presented as to whether the fixation of the term of Mr. Cashmore's office at two years was within the power of the council, and whether, when so fixed, it was subject to being cut off at any time by a majority vote.

The record indicates that various efforts were made to end Mr. Cashmore's incumbency at meetings held on January 5, 11, 18 and 25, 1938. We may dismiss the meetings of January 5, 11 and 18, 1938, by the mere statement that on those dates, by the rul-

ing of the council itself, there was no step taken that would affect Mr. Cashmore's office. As to the meeting of January 25, 1938, a motion was made to declare the office of vice-chairman vacant. On the roll call, twenty-six councilmen being present, thirteen voted in the affirmative, seven answered present, and six remained silent. The chair stated that it counted the votes of the thirteen councilmen not cast as being in the negative; that, therefore, there was a tie, and the president cast his vote in the affirmative. At that time the body was acting temporarily under rules of parliamentary procedure known as Reed's Rules. The said rules provide that a member present, but not voting, should be counted as voting in the affirmative. Thereafter, a resolution was offered that Councilman Burke be elected vice-chairman. On the roll call thirteen votes were cast for Burke, two for Councilman Schick, seven for Councilman Quinn, and four for Councilman McCarthy. The chair ruled that defendant Burke was elected. This despite the fact that section 25 of Reed's Rules provides that an officer of a legislative body may be elected by a plurality only where a rule providing for such election had been adopted. There was no such rule applicable on January twenty-fifth. To the contrary, the rules required a majority of a quorum to elect. Of course, thirteen votes were not a majority of the twenty-six. Even though an election were in order, no new vice-chairman could have been elected by the procedure followed on January twenty-fifth, in view of the rules under which the body acted.

Beyond that, however, we are of the opinion that the office of vice-chairman of the council was intended to carry with it tenure of office for the full term for which the individual has been elected to the council. Therefore, the council could not, on January 25, 1938, rescind its vote or reconsider its action of January third, and thus remove its vice-chairman.

Section 3, article 10 of the State Constitution, which limits the duration of office " during the pleasure of the authority making the appointment," applies only where the authority is continuous. (*Bergen* v. *Powell*, 94 N. Y. 591.)

Section 29 of the Charter refers only to a single election.

Examination of the Charter provisions concerning the duties of the vice-chairman clearly indicates that the selection of one to fill that place was to be deemed more than the temporary designation of a member who was to be unseated at the whim of the body, and that, having once elected the vice-chairman, the council had exhausted its powers. Provision was made for an additional remuneration on an annual basis for the vice-chairman, and he was to succeed to the powers of the president of the council in certain

specified instances. He had many administrative functions assigned to his office. Any construction which permitted him to be ousted at will would lend confusion to the city government, and we think it plain that the Charter provisions intended to grant the tenure indicated.

*People ex rel. Wade* v. *Strack* (1 Hun, 96) involved the choice of a president of the board of aldermen in the city of New York. Wade had been elected president for the year 1873, although the aldermen were elected for the years 1873 and 1874. During Wade's incumbency the statutes were amended to provide for incumbency of the president for a fixed term and to require a four-fifths vote for his removal. The decision was that the amendment did not continue Wade in office, as his term had expired. The court said that Wade was properly elected for one year, because there was no prescribed manner of choice, nor declared term of office at the time when he was chosen. It was pointed out that the question might have arisen as to whether Wade could have been removed during the year 1873 by a majority vote at the pleasure of the board, but that question was not presented, because of the expiration of the term for which Wade was elected. The court held that the board had the power to prescribe the term for which Wade was elected. It did not pass on the question we are now required to determine, as to whether the officer might be ousted during his term. Our view is that the present statutes intend that the vice-chairman is to be elected for a full term, and that when that election takes place the power to elect is exhausted until a vacancy occurs.

We find that the rules committee was validly appointed on January 3, 1938, and a committee on finance properly designated.

The adoption of rules, by section 30 of the Charter, is left entirely to the determination of the council. Here again the matter is procedural and the general parliamentary law was clearly intended to prevail. Rules, however, are always within the control of the majority, and may be changed at any time by a majority vote.

Judgment should be granted as above indicated.

MARTIN, P. J., O'MALLEY, GLENNON and COHN, JJ., concur.

Judgment unanimously directed as indicated in opinion. Settle order on notice.