Van Voorhis, J.
Defendant Income Fund Enterprises Corporation, pursuant to section 83 of the General City Law, petitioned the Common Council of the City of Kingston to reclassify its property to permit construction of garden-type apartments. Neighboring property owners protested and, such a protest haying been made, section 83 of the General City Law required a three-fourths vote of the council to pass the amendment requested. Eleven members of the 13-inember council were present when the amendment was voted upon. Nine voted for the amendment and 2 against it. In this action by property owners, the plaintiffs maintained that the amendment was not passed by a three-fourths vote of the whole council as required by section 83 of the General City Law.
Both Special Term and the Appellate Division have recognized that the common-law rule is that a quorum consists of the legislative members present, and that legislative action can be taken by a majority of the members present át a meeting at which a quorum is present (e.g., United States v. Ballin, 144 U. S. 1; Missouri Pac. Ry. Co. v. Kansas, 248 U. S. 276; Morris v. Cashmore, 253 App. Div. 657, affd. *262 without opn. 278 N. Y. 730). The rule is otherwise where it has been changed by statute or Constitution. The irresponsibility of legislative action taken a-t meetings attended by a small proportion of the membership has sometimes been subject to criticism, and, therefore, many changes in the common-law rule have been made by Constitution or statute so as to require a stated percentage of all of the members of the common council or other legislative body, stated in those words or by some equivalent expression. Our attention has been called to some 42 different occasions where these expressions are used in the Constitution, County Law, Second Class Cities Law, Legislative Law, General Municipal Law, Local Finance Law or Municipal Home Rule Law.* This indicates widespread change in policy from the common-law rule and bespeaks an accumulated experience at variance with the contention of appellants that such a requirement would disrupt local legislative action by illness or some other kind of enforced absence of members. The prevailing constitutional and legislative policy is that this is less to be feared than the fortuitousness or irresponsibility of legislative action taken at meetings which are not truly representative of the electorate.
One of these statutory departures from the common law of what, constitutes a quorum for legislative acts of municipal common councils is contained in section 35 of the Second Class Cities Law, which, except as modified by its charter, governs the City of Kingston, This statute states: “ The passage of an ordinance shall require the affirmative vote of at least a majority of all the paemhers of the common council.”
The Kingston City Charter (L. 1896, ch. 747, tit. XI, as amd.) provides (§ 115): - • A majority shall be a quorum for the transaction of business, but no tax, assessment or ordinance of a legislative character shall be passed, except by a vote of a majority of all the members in office ’ ’.
*263 A legislative policy is further expressed by section 41 of the General Construction Law which states that whenever three or more public officers are given any power or authority, or three or more persons are charged with any public duty to be performed or exercised by them jointly or as a board or similar body, “ a majority of the whole number of such persons or officers * * * shall constitute a quorum and not less than a majority of the whole number may perform and exercise such power, authority Or duty. For the purpose of this provision the words 1 whole number ’ shall be construed to mean the total number which the board, commission, body or other group of persons or officers would have were there no vacancies and were none of the persons or officers disqualified from acting.”
Special Term relied upon all three of these provisions. The Appellate Division stressed section 41 of the General Construction Law. All of them plainly define legislative policy.
Appellants say that Morris v. Cashmere (supra) states that section 41 of the General Construction Law does not apply to local legislative bodies. That is hardly true. The opinion of the Appellate Division in Morris v. Cashmore points out that the City Charter took precedence over section 41 of the General Construction Law and that section 34 of the New York City Charter provided that “No local law or resolution shall be passed except by at least the majority affirmative vote of all the councilmen.” At issue in Morris v. Cashmore was the election of a vice-chairman and adoption of rules for the proeeedings of the council. The Appellate Division’s opinion said (p. 660): “ Obviously, the election of a vice-chairman, or the adoption of rules) are not matters requiring the passage of a local law. Nor do they appear to be matters required to be carried out by resolution.” Here we are concerned with the adoption or amendment of a zoning ordinance^ which clearly falls within the coverage of both section 35 of the Second Class Cities Law and section 115 of the Kingston City Charter.
It is true that section 83 of the General City Law, which is the pertinent zoning enabling act, states that upon the filing of a protest to an amendment to the ordinance, as was done in this instance, “ such amendment shall not be passed except by a three-fourths vote of the council.”
*264 It is contended that this entails a reversion to the old rule and refers to three fourths of the councilmen present at a meeting attended by a quorum. Since there are 13 members of the council, a quorum would be 7 and, if the old common-law rule were reintroduced, it would mean that an amendment could be carried by 6 votes if a protest had been filed but would require 7 in the absence of any protest. Realizing this difficulty, which was pointed out in Special Term’s opinion herein, appellants argue for a construction that would permit the adoption of an amendment against a protest by not less than 7 votes. In other words, if 9 members were present at a meeting, 7 votes would be all that would be needed to carry an amendment both with or without the filing of a protest. It could hardly have been intended by the Legislature that under any set of circumstances there would be no difference in the amount of votes -required regardless of whether a protest were made. The obvious intention of the statute is that, under any circumstances, a larger vote should be necessary if a protest is filed than would otherwise be the case.
Special Term and the Appellate Division have agreed unanimously on this construction. We see no escape from it. To hold that a majority of all of the members is necessary if there is no protest but that only three fourths of those present is needed in the presence of a protest would be confusing- and would'violate what appears to have been the legislative intent. The Fourth Department thought likewise in deciding Aquavella v. Lamb (25 A D 2d 815, affd. without deciding this question 17 N Y 2d 839) in which it was said unanimously that “ A three-fourths vote of the entire membership of the Common- Council of the City of Rochester was required to enact the amendment to-the ordinance in question here to effect compliance with the provisions of section 83 of the G-eneral City Law.”
The order appealed from should be affirmed, with costs.

 N. Y. Const., art. III, §§ 14, 20, 23; art. IV, § 7; art. IX, § 2, subd. (b), par. (2); General Municipal Law, § 99-e, subd. 1; §§ 119-o, 711, 72-a, 103, subd. 5; §§ 239-m, 404; County Law, §§ 222, 226, 227, 233, former § 304, subds. 4, 5, former §§ 342, 828; Second Class Cities Law, §§ 32, 34, 35, 37, 38, 40, 43, 101, 120; Legislative Law, §§ 40, 44; General City Law, § 23, subd. 2, par. b; Local Finance Law, § 33.00, subd. a; § 40.00, subd. d; § 102.00, subd. g; Municipal Home Rule Law, § 20, subds. 1, 4; §§ 21, 40.