Breitel, J.
In consolidated article 78 proceedings to annul disapproval by a county planning commission of a town zoning change, the county commission appeals. One issue is whether an amendment of the Suffolk County Charter may invest veto power over town zoning changes in a county-wide commission, thus superseding section 239-m of the General Municipal Law. Section 239-m provides for regional review of zoning changes, but limits the effect of disapproval by the county commission*. Another issue is whether a vote by eight of the nine members of the county commission present at the hearing constituted a two-thirds majority of the commission, authorized to consist of 15 members.
*370 At the relevant times, the Suffolk County Planning Commission, although authorized to have 15 members, had only 13 áppointed members. The county planning commission, after a public hearing attended by nine members, by a vote of eight to zero, with one abstention, disapproved a, zoning change proposed by the Town of Smithtown. The change would have permitted the use for a franchised automobile dealership of land within 500 feet of the boundary of the Village of The Branch, previously zoned residential. The Appellate Division annulled the determination of the county planning commission on the authority of Matter of We’re Assoc. Co. v. Bear (35 A D 2d 846, affd. 28 N Y 2d 981).
The order should be affirmed, but only for limited reasons. The county planning commission disapproval was ineffective for lack óf a two-thirds majority of the entire commission. Absent valid disapproval within the specified time limit, the town zoning change is deemed approved. The county commission had authority, however, if properly exercised, to disapprove and in effect veto this type of zoning change. Section 1330 of the County Charter is a partial transfer of function from town to county, authorized under article IX (§ 1, subd. [h]) of the State Constitution and section 33 of the Municipal Home Rule Law. The procedure for county commission review of town zoning changes in 239-m of the General Municipal Law may be superseded by subsequent county charter amendment.
On August 7, 1970, petitioner Weisz filed an application with the Town Clerk of Smithtown to rezone a parcel of land from “ quarter acre residential ” to a “ wholesale and service ” classification. The parcel consists of approximately 6.2 acres of nearly vacant land in the Town of Smithtown, but within 500 feet of the boundary of the Village of The Branch. Petitioner Weisz requested rezoning to permit use of the property for a franchised automobile dealership and for a wholesale automobile parts business.
On September 17,1970, the Town Board of Smithtown held a public hearing on the Weisz application. On December 22,1970, the board resolved, by a 3-2 vote, to amend the town zoning ordinance as requested. Six days later, on December 28, 1970, the town clerk forwarded the resolution to the Suffolk County Plan *371 ning Commission for review. On the same day, the village clerk wrote the county commission protesting the proposed change.
On January 4,1971, the Suffolk County Planning Department sent notices of a public hearing pursuant to “ Section 1304 of the Suffolk County Charter, as amended ” to review the proposed zoning change. (It is assumed that “ Section 1304, as amended ” refers to section 1330, its replacement, since section 1304 had not been amended.) The hearing was held on January 22,1971. At the conclusion of the hearing, the commission disapproved the proposal by a vote of eight to zero, with one member present abstaining. As previously noted, at this time, section 1302 of the County Charter provided that the commission was to consist of 15 members, but only 13 had been appointed. A resolution disapproving the proposed change required “ a two-thirds vote of such commission after a public'hearing ” (Suffolk County Charter, § 1330).
Subsequently, on February 16,1971, the Town Board of Smith-town resolved that section 1330 of the County Charter was “ illegal ”, and unanimously “ confirmed ” its previous action changing the zone. Three days later, Smithtown began this article 78 proceeding to annul the determination of the county planning commission. The following day, petitioner Weisz instituted a similar proceeding.
The Appellate Division annulled the county commission determination on the authority of Matter of We’re Assoc. Co. v. Bear (35 A D 2d 846, supra). In We’re, the Nassau County Planning Commission vetoed a town zoning change relying on the Nassau County Government Law enacted in 1936. The court held that the 1936 charter provision had been superseded by section 239-m of the General Municipal Law, and that by the terms of section 239-m the county commission disapproval could be overridden by the town by a majority plus one vote of the town board.
Suffolk County concedes on the authority of the We’re case (supra) that old section 1304 of its County Charter was superseded by section 239-m of the General Municipal Law. The county contends, however, that section 1330 of the charter, effective January 1, 1971, is applicable, and that it, in turn, supersedes section 239-m. Section 1330 would give the county commission veto power over zoning changes near town boundaries; *372 in short, the commission’s power is not merely conditionally advisory, as it would be under section 239-m.
Smithtown and petitioner Weisz, on the other hand, contend that section 1304 is applicable. Alternatively, they urge that even if section 1330 were applicable, it is void to the extent that it is inconsistent with section 239-m. Finally, they argue that even if section 1330 were applicable and controlling, the county commission lacked the two-thirds vote required by section 1330 for disapproval.
True, if section 1304 applies, as petitioners contend, then the county commission disapproval was merely advisory because, under the We’re case (supra), section 1304 was superseded by section 239-m of the General Municipal Law. But, if section 1330 applies, as is the case, then the We’re case is not applicable, because section 1330 was effective after the effective date of section 239-m of the General Municipal Law. As will be shown, however, in the last part of this opinion, the county commission disapproval was nevertheless ineffective, even if taken under section 1330, for lack of the two-thirds vote required by that section.
The validity of section 1330 of the County Charter hinges on interpretation of the constitutional and statutory provisions dealing with the power of local government, and section 239-m of the General Municipal Law. The State Constitution empowers counties to adopt, amend, or repeal alternative forms of county government (art. IX, § 1, subd. [h], par. [1]). Counties may also, with a double referendum, transfer functions from cities, towns, or villages within the county and abolish local offices no longer having these functions. The cited provision reads: ‘ ‘ Counties; other than those wholly included within a city, shall be empowered by general law, or by special law enacted upon county request pursuant to section two of this article, to adopt, amend or repeal alternative forms of county government provided by the legislature or to prepare, adopt, amend or repeal alternative forms of their own. Any such form of government or any amendment thereof, by act of the legislature or by local law, may transfer one or more functions or duties of the county or of the cities, towns, villages, districts or other units of government wholly contained in such county to each other or when authorized by the legislature to the state, or may abolish one or more offices, departments, agencies or units of government *373 provided, however, that no such form or amendment, except as provided in paragraph (2) of this subdivision, shall become effective unless approved on a referendum by a majority of the votes cast thereon in the area of the county outside of cities, and in the cities of the county, if any, considered as one unit. Where ah alternative form of county government or any amendment thereof, by act of the legislature or by local law, provides for the transfer of any function or duty to or from any village or the abolition of any office, department, agency or unit of government of a village wholly contained in such county, such form or amendment shall not become effective unless it shall also be approved on the referendum by a majority of the votes cast thereon in all the villages so affected considered as one unit.”
Part 1 of article 4 of the Municipal Home Rule Law entitled “ The County Charter Law” implements the constitutional grant of power to the counties (see §§ 30-35). Under section 33 of the Municipal Home Rule Law a county charter may transfer one or more functions to a town wholly within the county (§ 33, subd. 4, par. c; see 1968 Opns. Atty. Gen. 96, 97; but see Op. St. Comp. 71-261 [1971]). A charter amendment transferring functions from a town to the county must be approved by referendums of the cities and of the area outside the cities taken as two separate units (N. Y. Const., art. IX, § 1, subd. [h], par. [1]; Municipal Home Rule Law, § 33, subd. 7, par. [a]).
A 1970 amendment to article 4 of the Municipal Home Rule Law expanded the definition of “ Charter law ” to include local laws “ transferring a function ” pursuant to a new section 33-a, enacted by the same chapter (L. 1970, eh. 708). Previously, the definition embraced only a ‘ ‘ local law providing, amending or repealing a county charter.” Section 33-a contains the same language as section 33 for transferring functions and has the same referendum requirements. The difference now is that functions may be transferred by local laws not actually part of the county charter but enacted with the same formality. It is essential that the same formalities be required under this new section for transfer of function, because they are required under the constitutional provision, quoted above.
Section 1330 of the Suffolk County Charter was enacted in accordance with section 33 of the Municipal Home Rule Law. It was proposed by a charter revision commission set up by *374 resolution of the board of supervisors, a procedure specified ujider subdivision 5 of section ,33 of the Municipal Home Rule Law. The proposal was approved in the November, 1970 general election. Section 1330 provides: ‘ Power to zone within five hundred feet of town or village boundary restricted. In addition to the other provisions of this article concerning municipal zoning actions, no zoning ordinance nor any amendment of a zoning ordinance passed by any town or village, in the county relating to any portion of the said town or village within five hundred feet of a town or village boundary shall take effect in respect to such portion of said town or village until said ordinance or amendment has been submitted to and approved by the county planning commission. On the submission to it of said ordinance or amendment, the county planning commission shall promptly give written notice thereof to the clerk of any town or village adjacent to the area which is the subject of said ordinance or amendment. The ordinance or amendment shall be deemed to have been approved, unless within forty-five days after the same has been filed with the county planning commission (a) a municipality adjoining the boundary involved interposes an objection to the-zoning ordinance or an amendment to the zoning ordinance within twenty days of the date the ordinance or amendment has been filed with the county planning commission, 'and (b) a resolution disapproving it is adopted by a two-thirds vote of such commission after a public hearing thereon. The county planning commission shall give at least seven days ’ prior written notice of such hearing to the clerk of, any town or village adjacent to the area which is the subject of said ordinance or amendment.”
The stated effect of this section was to give the county planning commission veto power over zoning changes affecting property within 500 feet off town or village boundaries.
Both sections 33 and 33-a of the Municipal Home Rule Law make charter amendments and local laws transferring functions subject to the restrictions “in the constitution, in this article [art. 4] or in any other applicable law ” (§ 33, subd. 1; § 33-a, subd. 1). The salient attack on section 1330 pressed by petitioners Smithtown and Weisz is that it is inconsistent with section 239-m of the General Municipal Law, and, therefore, subject to thé restriction last mentioned.-
*375 Section 239-m of the General Municipal Law, last amended in 1969 (ch. 1068), provides for county commission review of zoning changes, but makes the review power conditional. To be sure, the section grants a power of zoning review to county government, but there is nothing to suggest that it is intended to be exclusive of any other mode of review, or that the county may not under other provisions of law obtain review powers of greater effect.
The 1968 Eeport of the Joint Legislative Committee on Metropolitan and Eegional Areas Study (N. Y. Legis. Doc., 1968, No. 33) discussed the recent amendments to section 239-m at the time, the amendments were proposed. Nassau and Suffolk Counties had once been excepted from section 239-m, because under their charters there already was county planning review of local zoning changes. The exceptions for Nassau and Suffolk were dropped in 1968 to make section 239-m general rather than special law (L. 1968, ch. 962). As general law it would supersede inconsistent county charters and would prevent repeal or amendment without a double referendum. It was intended, in this manner, to provide limited regional planning in counties which had previously had none. It was also intended to allow counties by appropriate enactments and referendums to override the advisory system embraced in section 239-m.
Thus, the Committee report states: “ To the Committee, the exemption of Nassau and Suffolk by means of the sentence in Sections 239-1 and 239-m was of importance for two reasons. One was the impact of the exception on the status of both sections of law. Both the State Constitution and the Municipal Home Eule Law state that a general law must apply alike, in terms and effect, to all counties or to all counties outside New York City. The sentence excepting Nassau and Suffolk thus rendered Sections 239-1 and 239-m special laws and as such they could be amended by local law. Other counties, with other or inconsistent provisions regarding zoning review, could have their provisions take precedence over the State statutes. By eliminating the exceptions, the Committee’s bill transformed the amending sections into general law and this law now supersedes inconsistent provisions in counties that already have charters.
“ As a general law, the amended sections 239-1 and 239-m cannot be amended or repealed by local law in counties. The Com *376 mittee could, have inserted language to this effect to make its intent clear although such language does not appear to be necessary at this time.
‘ * However, counties operating under charter can provide for a different review system, or exempt themselves from the provisions of the statute entirely, through revision of their charters or by including a specific provision to this effect in a new charter hereinafter enacted.” (pp. 87-88).
Since the last-quoted paragraph shows that section 239-m was not intended to preclude further transfer of the zoning power to the county by “charter”, section 1330 of the Suffolk County Charter is valid. The distinction between “ local law ” and the “ charter law ” in the last two quoted paragraphs is important ^since only “ charter law ”, as defined by section 32 (subd. 2) of the Municipal Home Rule Law, must be passed by the double referendum system. The double referendum, as noted earlier, is required under both the Constitution and section 33 of the Municipal Home Rule Law for a transfer of function. The rather stringent requirement that there be a direct voice of the electors residing in the several kinds of localities affected, explains the otherwise unusual grant of power to counties to transfer functions from one layer of local government to another. The desirability of transferring zoning powers to planning units larger than towns has been recently emphasized by this court (see Matter of Golden v. Planning Bd. of Town of Ramapo, 30 NY 2d 359, 374, dis. opn. pp. 383-385).
For procedural reasons, however, the Commission’s action was not effective: to act under section 1330 (or section 1304 for that matter since the requirement is the same) a resolution had to be “ adopted by a two-thirds vote of such commission.”
Under the common-law rule a majority of a body constituted a quorum, and if there were a quorum a vote of a majority of those present was sufficient for valid action (e.g., Morris v. Cashmore, 253 App. Div. 657, 659, affd. 278 N. Y. 730; Ann., Municipal Council — Majority Vote, 43 ALR 2d 698, 702). There was another common-law rule, however, that where a statute conferred power to act on several persons, all must be present before the power could be exercised (Johnson v. Dodd, 56 N. Y. 76, 79; Morris v. Cashmore, 253 App. Div., at p. 661).
*377 Section 41 of the General Construction Law was designed to abrogate the common-law rule requiring the presence of the whole body to act. It provides: “ Whenever- three or more public officers are given any power or authority * * * a majority of the whole number of such persons or officers * * * shall constitute a quorum and not less than a majority of the whole number may perform and exercise such power, authority or duty. For the purpose of this provision the words whole number ’ shall be construed to mean the total number which the board, commission, body or other group of persons or officers would have were there no vacancies and were none of the persons or officers disqualified from acting. ’ ’ This section has been held applicable to local bodies, and has been interpreted as defining legislative policy where public bodies are required to act by two-thirds or three-fourths majorities (Savatgy v. City of Kingston, 20 N Y 2d 258, 263).
The statutory language “ two-thirds vote of such commission ”, different and distinguishable from other formulations of the vote required to take action in a deliberative body, has generally been interpreted to require favorable votes of two thirds of the entire commission (e.g., Savatgy v. City of Kingston, 20 N Y 2d, at pp. 261, 264; Aquavella v. Lamb, 25 A D 2d 815, affd. 17 N Y 2d 839; Matter of Downing v. Gaynor, 47 Misc 2d 535, 536-538; Ann., Municipal Council — Majority Vote, 43 ALR 2d 698, 703-706, supra; Streep v. Sample, 84 So. 2d 586, 588 [Fla.] ; Moberry v. City of Jeffersonville, 38 Ind. 198, 203; State ex rel. Doyle v. Torrence, 203 Tenn. 175,182-183; cf. Iannarone v. Caso, 59 Misc 2d 212, 21A-215). Thus, absence or abstention of a commission member does not dispense with the requirement of a two-thirds vote of the entire commission (id.). Nor does a vacancy on the commission reduce the number of votes required (e.g., Ann., Municipal Council — Majority Vote, 43 ALR 2d 698, 706-709, supra, and cases cited; Steiner, Inc. v. Town Plan & Zoning Comm., 149 Conn. 74, 77-78, and cases cited).
In the Savatgy case (20 N Y 2d 258, supra) the Common Council of the City of Kingston amended its zoning law under section 83 of the General City Law. That section provides that an ‘ amendment shall not be passed except by a three-fourths vote of the council.” The court held that three-fourths of all the *378 authorized membership of the common council was required to pass the amendment (id., at p. 264).
The precise issue, whether a two-thirds vote of an entire county planning commission is required for disapproval of a town board zoning change, was raised in Matter of Downing v. Gaynor (47 Misc 2d 535, supra). The Downing case involved a provision of the Nassau County Government Ltrw to the effect that approval of the town board resolution is inferred unless the county planning commission disapproved the town action by a " two-thirds vote of such commission ”. At the time, the Nassau County Planning Commission was composed of only four members, although the law creating it provided for five. Of the four members present, only three voted in favor of disapproval, and one abstained. The court held the disapproval ineffective, requiring at least two thirds of five,, qr four votes for an effective disapproval.
In the instant case, the county commission would have had 15 members at full strength. “ Two-thirds of such commission ” requires a minimum of 10 favorable votes. Of the nine members present, eight voted for disapproval and one abstained. Without more commissioners in attendance, no effective disapproval of the town zoning change was possible. Section 1330 of the Suffolk County Charter provides that if there is no disapproval within 45 days, the town zoning change is deemed approved. Since the timely disapproval was ineffective, the county commission has lost its opportunity to veto the Smithtown zoning amendment.
In summary, for the reasons discussed, the county planning commission had power to exercise a veto.,over the town zoning change. The commission action, however, failed in this instance for lack of a two-thirds vote of the commission.
The order of the Appellate Division should be affirmed, with costs.
Chief Judge Fuld and Judges Burke, Scileppi, Bergan, Jasen and Gibson concur.
Order affirmed.

 Under section 239-m the municipal body having jurisdiction may override disapproval by the county planning agency “ by a vote of a majority plus one of all the members thereof and after adoption of a resolution setting forth the reasons for such contrary action.”