HON. CARL E. MOORADIAN Corporation Counsel, Niagara Falls
This is in response to your letter wherein you ask for an opinion of the Attorney General relating to the following questions:
 QUESTION NO. 1: "According to the provisions of the City Charter, is the elected Mayor or the appointed City Manager the Chief Executive Officer of the City of Niagara Falls, New York?"
Niagara Falls City Charter, § 44, provides that the administrative and executive powers, including powers of appointment of officers and employees of the City of Niagara Falls, are vested in the City Manager. Section 44 enumerates in great detail the administrative and executive powers of the City Manager. The Charter, in section 42, provides, in part:
 "The mayor shall preside at all meetings of the council. He shall be the official head of the city for the service of civil process, and under the military law, and for all ceremonial purposes. He shall have no power to veto, but shall have the same power as a councilman to introduce and vote upon all matters coming before the council. * * *"
It is apparent that the appointed City Manager, and not the Mayor, is the Chief Executive Officer of the City of Niagara Falls.
 QUESTION NO. 2: "Does the power to request passage of a specific bill by the legislature reside in `the elective or appointive chief executive officer' only in the case of a county, or in the case of City as well?"
Municipal Home Rule Law, § 40, provides, in part:
 "The elective or appointive chief executive officer, if there be one, or otherwise the chairman of the board of supervisors, in the case of a county, the mayor in the case of a city or village or the supervisor in the case of a town with the concurrence of the legislative body of such local government, or the legislative body by a vote of two-thirds of its total voting power without the approval of such officer, may request the legislature to pass a specific bill * * *." (Emphasis supplied.)
We interpret the above provisions to mean that where there is a chief executive officer in a city, whether elective or appointive, such request is to be made by the chief executive officer, rather than the mayor.
 QUESTION NO. 3: "If such request can be made by an appointive chief executive officer in the case of a city, does it need the concurrence of the legislative body of local government?"
Municipal Home Rule Law, § 40, provides that if such request be made by the chief executive officer in the case of a city (or by the mayor where there is no chief executive officer), such request must be made with the concurrence of the legislative body of the city.
 QUESTION NO. 4: "In the case of the City of Niagara Falls, New York, does the power to make such request reside in the Mayor or the City Manager?"
See, answers to questions No. 1, No. 2 and No. 3, supra.
 QUESTION NO. 5: "In the case of the City of Niagara Falls, if the power to make such request resides in the Mayor, and the Mayor does not make such request, will it require a vote of two-thirds of the total voting power of the legislative body of the local government?"
Such power does not reside in the Mayor, therefore, your question is academic.
 QUESTION NO. 6: "What is the definition of `the total voting power'?"
General Construction Law, § 41, provides:
 "Whenever three or more public officers are given any power or authority, or three or more persons are charged with any public duty to be performed or exercised by them jointly or as a board or similar body, a majority of the whole number of such persons or officers, at a meeting duly held at a time fixed by law, or by any by-law duly adopted by such board or body, or at any duly adjourned meeting of such meeting, or at any meeting duly held upon reasonable notice to all of them, shall constitute a quorum and not less than a majority of the whole number may perform and exercise such power, authority or duty. For the purpose of this provision the words `whole number' shall be construed to mean the total number which the board, commission, body or other group of persons or officers would have were there no vacancies and were none of the persons or officers disqualified from acting." (Emphasis supplied.)
In Matter of Smithtown v. Howell, 31 N.Y.2d 365, 376 (1971), Judge Breitel commented on the application of General Construction Law, § 41, as follows:
 "Under the common-law rule a majority of a body constituted a quorum, and if there were a quorum a vote of a majority of those present was sufficient for valid action (e.g., Morris v. Cashmore, 253 App. Div. 657, 659, affd. 278 N.Y. 730; Ann. Municipal Council — Majority Vote, 43 ALR 2d 698, 702). There was another common-law rule, however, that where a statute conferred power to act on several persons, all must be present before the power could be exercised (Johnson v. Dodd, 56 N.Y. 76, 79; Morris v. Cashmore, 253 App. Div., at p. 661).
 "Section 41 of the General Construction Law was designed to abrogate the commonlaw rule requiring the presence of the whole body to act. It provides: `Whenever three or more public officers are given any power or authority * * * a majority of the whole number of such persons or officers * * * shall constitute a quorum and not less than a majority of the whole number may perform and exercise such power, authority or duty. For the purpose of this provision the words "whole number" shall be construed to mean the total number which the board, commission, body or other group of persons or officers would have were there no vacancies and were none of the persons or officers disqualified from acting.'"
The words "total voting power" as found in Municipal Home Rule Law, § 40 and the words "whole number" as found in General Construction Law, § 41 are synonymous and the construction of the words "whole number" is found in the underscored portion of General Construction Law, § 41, supra, and the comments of Judge Breitel in Matter of Smithtown v. Howell, supra.
 QUESTION NO. 7: "What is the definition of `concurrence' of the legislative body of local government?"
In the case of the City of Niagara Falls, where there is a City Council consisting of four Councilmen and the Mayor, an affirmative vote of at least three members of the City Council is required to exercise the powers of such Council, regardless of vacancies on said Council, absences or disqualifications from acting, except in those instances where by law more than a majority of the whole number of the members of the Council is required for affirmative action. (See, copy of informal opinion of the Attorney General, dated January 29, 1975 and addressed to Hon. John R. Collins, Jr., Chairman, Indian Lake Planning Board, which is enclosed herewith.)
 QUESTION NO. 8: "In the City of Niagara Falls where there is a City Council consisting of four Councilmen and the Mayor, what is the vote needed to comprise two-thirds of the total voting power?"
Since three affirmative votes comprise only 60 percent of the whole body comprising the Council of the City of Niagara Falls at least four votes would be necessary to comprise two-thirds of the "whole number" or "total voting power."
 QUESTION NO. 9: "In the case of the City of Niagara Falls, if such power resides in the Mayor and in the absence of his approval such request requires a two-thirds vote of the total voting power, would not such interpretation violate the constitutional `one man-one vote' theory where the Mayor of the City of Niagara Falls has no veto power and only has one vote weighted equally with all other members of the City Council?"
Such power does not reside in the Mayor, therefore, your question is academic.
However, we call to your attention that pursuant to provisions of Niagara Falls City Charter, § 42, the Mayor has "the same power as a councilman to introduce and vote upon all matters comingbefore the council." (Emphasis supplied.)