Hon. Andrew M. Harkness Corporation Counsel City of Canandaigua
You have asked for our opinion concerning the validity of the City of Canandaigua's charter provision that authorizes a board of zoning appeals and provides that the members are to be appointed by the Common Council. You note that section 81 of the General City Law authorizes a city that regulates land use to provide for a board of zoning appeals. You also point out that the authorization states that they mayor "may appoint" the board of appeals. Obviously, your charter provision is inconsistent with section 81 unless, as you suggest, "may appoint" was not intended to be the exclusive means of appointment.
In our view, there is a more basic reason that your charter provision is valid. Article IX of the Constitution directly grants to local governments home rule power to enact local laws (§ 2[c] [i and ii]), but the local law may not be inconsistent with the Constitution or a general law. This grant is divided into matters relating to "property, affairs or government" and to other enumerated matters as to which the Legislature may restrict the power to enact local laws. The Legislature is authorized to grant powers in addition to those enumerated in the Constitution and to withdraw or restrict such additions (§ 2 [b] [3]).
Subdivision 1 of section 10 of the Municipal Home Rule Law grants the same home rule powers granted by Article IX, puts restrictions on some of the constitutional grants that are not property, affairs or government and makes additional statutory grants of home rule power. The first enumerated grant in both Article IX and section 10 is the power to enact local laws concerning "the mode of selection and removal, * * * of its officers" (Art IX, § 2 [c] [ii] [1]; Municipal Home Rule Law, § 10 [1] [ii] [a] [1]). This enumerated power is a matter of "property, affairs or government". (See Resnick v County of Ulster,44 N.Y.2d 279, 286 [1978].) Thus, a local government by local law may determine the mode of selection of its officers so long as the determination is not inconsistent with a general law.
Both Article IX of the Constitution and the Municipal Home Rule Law define a general law as a law that "in terms and in effect applies alike to all counties, all counties other than those wholly included within a city, all cities, all towns or all villages" (Art IX, § 3 [d] [1]; Municipal Home Rule Law, § 2 [5]). The sentence in section 81
of the General City Law that authorizes a mayor of a city to appoint a board of zoning appeals also contains the words "except a city having a population of more than one million people." Thus, that sentence in section 81 does not apply to all cities and therefore is not a "general law" as defined in section 2 of the Municipal Home Rule Law; it is a "special law" as defined in Article IX and the Municipal Home Rule Law (Art IX, § 3 [d] [4]; Municipal Home Rule Law, § 2
[12]). The sentence may, however, be a general law for all constitutional purposes other than as a restriction on a city's home rule power. (We do not consider at this time the general law status of provisions of section 81 other than the sentence conferring appointing powers on the mayor.)
Prior to the adoption of the present home rule article of the Constitution, the predecessor Article IX, § 11, specified that the Legislature could act in relation to the property, affairs, or government of a city "only by general laws which shall in terms and effect apply alike to all cities" (emphasis added), or upon request of a city. In the leading case of Johnson v Etkin, 279 N.Y. 1 (1938), the Court of Appeals pointed out that the Optional City Government Law then in effect gave toall cities the option to choose any one of seven forms of government. Nevertheless, in answer to the argument that this was a general law, the Court observed that in terms and effect the law applied only to cities that elected to come under it:
 "The Optional City Government Law is not binding upon all cities; only eight so far have chosen to come within it. It is optional. It may or may not become part of the city charters and is dependent for operation upon the electors of each city. This is not a general law, immediately effective and operative in all cities alike. It may operate in one city when adopted and not in another. Its effectiveness as a law — its force as a law is not general; it would only become general in effect when adopted by all cities in one form or another." (p 6)
The drafters of the current Article IX used the quoted qualifying words from section 11 of the old Article IX as part of the definition of a general law for all purposes of the new Article IX. Those drafters undoutedly were aware of the gloss that the Court had put upon the words "in terms and effect" in the old section.
The Legislature is also aware of the home rule definition of a general law. In Matter of Smithtown v Howell, 31 N.Y.2d 365 (1972), the Court noted that the 1968 Report of the Joint Legislative Committee on Metropolitan and Regional Areas Study discussed the significance of the amendments of sections 239-1 and 239-m of the General Municipal Law that removed Nassau and Suffolk Counties as exceptions to the coverage of the sections. The Court quoted from the Committee report:
 "`To the Committee, the exemption of Nassau and Suffolk by means of the sentence in Sections 239-1 and 239-m was of importance for two reasons. One was the impact of the exception on the status of both sections of law. Both the State Constitution and the Municipal Home Rule Law state that a general law must apply alike, in terms and effect, to all counties or to all counties outside New York City. The sentence excepting Nassau and Suffolk thus rendered Sections 239-1 and 239-m special laws and as such they could be amended by local law.'"
Thus, it is imperative when using the terms "general" and "special" laws to distinguish between laws affecting home rule powers and all other laws that may be affected by other constitutional provisions that speak of "general" or "special" laws.
The significance of careful distinctions is demonstrated by Matter ofUngar v City of Long Beach, 70 Misc.2d 554 (Sup Ct, 1972), in which the Court interpreted a provision of the Long Beach City Charter in light of section 81 of the General City Law, the section relevant to your inquiry. (The Court found that the Charter by its own terms made it subject to the requirements of section 81.) In dictum, while commenting on counsel's argument, the Court noted that an opinion of this office (1970 Op Atty Gen [Inf] 83), was relied upon by the City of Long Beach in support of the argument that section 81 is a special law, but the Court went on to say that we had issued a "contrary" opinion shortly thereafter (id. at 123). The second opinion, as the Court pointed out, "held that a city ordinance could not supersede section 81" (70 Misc.2d at 557) (emphasis supplied). This is not contrary to our earlier opinion. A city's home rule power to supersede a State statute can be exercised only by enacting a local law unless the State statute by its own terms authorizes supersession by ordinance. Our second opinion simply said that there was no authority to supersede by ordinance. The opinion did not say that section 81 is a general law.
The Court in Ungar went on to comment that "section 81 is a general law; it applies to all cities of the State of New York under 1,000,000 population; it applies to a class within the entire States" (70 Misc.2d at 557). The Court cited Farrington v Pinckney, 1 N.Y.2d 74 (1956), a citation that is inapposite in a matter involving home rule powers under Article IX. That case upheld a jury-selection law that classified counties outside New York City into two classes, those under 100,000 in population and those of 100,000 or more. The holding was that a law that classified counties was nonetheless a general law if the classification was reasonable. But that case involved an argument that the law was a "special act" concerning jury selection and therefore prohibited by section 17 of Article III of the Constitution, which forbids passage of private or local bills in 14 categories. For purposes of that section, a law that classifies municipalities by population remains a general law if the classification is reasonable. Consequently, Farrington is a viable and sound precendent to support a law that is not universal in application if the basis for limiting its coverage is by use of a reasonable classification. (See, for example, Hotel Dorset Co. v Trustfor Cultural Resources, 46 N.Y.2d 358 [1978], which relied on Farrington
in ruling that a tax-exemption statute was a general law as required by Article XVI, § 1.) Farrington is not a precedent usable in a case involving litigation over whether a local law enacted under the Municipal Home Rule Law is inconsistent with a general law as defined by that law. If the Legislature wishes by general law to restrict the exercise of a home rule power relating to property, affairs, or government, the restrictive law must apply to all cities, towns, villages, counties, or all counties except those wholly within a city.
In essence, there is a crucial distinction between a general law in the context of a muncipality's home rule powers and a general law in other contexts. In the absence of a constitutional restriction, the Legislature may legislate as it wishes — covering everybody, everything, or every place in the State or covering only some people, some things, or some palces. If the Constitution restricts the Legislature's power by requiring general laws in a context other than Article IX, the Legislature still does not have to cover everybody, everything, or every place; it can legislate selectively so long as the basis for inclusion and exclusion is reasonable. But when the Legislature exercises State power over local governments in the area of "property, affairs or government", Article IX requires the Legislature to cover all cities, all towns, all villages, or all counties; and if the Legislature fails to cover them all, local governments have the power to enact local laws amending the State law.
In areas other than property, affairs, or government, local governments have also been granted power to enact local laws amending State laws that are not general as defined in Article IX "except to the extent that the legislature shall restrict the adoption of such a local law" (Art IX, § 2 [c] [ii]; see also section 10, subd 1, par ii, Municipal Home Rule Law). The Legislature may exercise this power of restriction either by a general or a special law, both as defined in Article IX. An example of a general law exercising this power is subdivision 1 of section11 of the Municipal Home Rule Law, which lists a number of things that local governments may not do by a local law superseding a State statute. An example of a special law exercising this power is the denial of home rule power to New York City to require certain classes of employees or public officers to be residents. Sections 3 and30 of the Public Officers Law have several subdivisions beginning: "Neither the provisions of this section or of any general, special or local law, charter, code, ordinance, rule or regulation * * * shall apply to * * *". This is a rubric for a restriction under the exception quoted above. (These subdivisions were upheld in UniformedFirefighters Association v City of New York, Court of Appeals, April 29, 1980.) Another example of an exercise of the power to restrict home rule is a special law that supersedes powers granted to certain municipalities because the Legislature has determined that there is an overriding State concern. See the Adirondack Park Agency Act, Article 27 of the Executive Law, section 801 of which sets forth the Legislature's reasons for overriding municipalities within the park. (The Act was upheld in WambatRealty Corp v New York, 1 N.Y.2d 490 [1977].)
To be complete, one must note that the Article IX definition of a general law has no application in a case where no home rule power exists. An example is the power to levy a tax. Section 1 of Article XVI reserves to the State all power to tax but authorizes the Legislature to "delegate" taxing power. Section 2 (c) (ii) (8) of Article IX grants home rule power over only the "levy, collection and administration of local taxes". So far as Article IX is concerned, the Legislature can delegate taxing power either by general or special laws as defined in that Article.
In sum, the Legislature may legislate in the area of property, affairs, or government of counties, cities, towns, or villages by general law as defined in Article IX or by special law as there defined but only if a local government requests the special law or, in the case of local governments other than New York City, if the Governor requests the law accompanied by a certificate of necessity and the law passes by a two-thirds vote in each house (Art IX, § 2 [b] [2]). In all other cases of home rule powers, the Legislature may legislate by general or special law as defined in Article IX. In the case of State legislation that concerns a matter over which there has been no grant of home rule power, the Article IX definitions do not apply. In those cases other than Article IX in which the Constitution elsewhere requires legislation only by general law, the traditional definition applies.
You note that although your charter provides for appointment of members of the board of zoning appeals, the number of members is set by ordinance and that the common council intends by ordinance to increase the number from six to seven. As noted earlier, this opinion does not consider other aspects of section 81. No problem is raised, however, in adopting an ordinance increasing the membership to seven since section 81 authorizes seven members and specifies that this may be done by ordinance.
We conclude that the provision in section 81 of the General City Law calling for appointment of members of a board of zoning appeals by a mayor is not a general law as defined in the Municipal Home Rule Law in that it does not apply to all cities and that the Canandaigua city charter provision granting the power of appointment to the common council is valid.