Manuel ACEVEDO–CORDERO,
et al., Plaintiffs, Appellees,

v.

Rafael CORDERO–SANTIAGO, et
al., Defendants, Appellants.

No. 91–1730.

United States Court of Appeals,
First Circuit.

Heard Nov. 7, 1991.

Decided March 6, 1992.

Anabelle Rodriquez, Deputy Sol. Gen., with whom Jorge E. Perez Diaz, Sol. Gen., Guaynabo, P.R., was on brief for defendants, appellants.

Samuel H. Heldman with whom Frederick T. Kuykendall, III, Jay Smith, Cooper, Mitch, Crawford, Kuykendall & Whatley, Birmingham, Ala., and Nicolas Delgado Fi-

gueroa, Puerto Nuevo, P.R., for intervening plaintiffs, appellees.

Francisco Gonzalez, Santurce, P.R., for plaintiffs, appellees.

Before TORRUELLA, Circuit Judge, BOWNES, Senior Circuit Judge, SKINNER,* District Judge.

SKINNER, District Judge.

In this action under 42 U.S.C. § 1983 approximately 178 former employees of the city of Ponce, Puerto Rico, claim that their First Amendment right of free association was violated by the defendants, the mayor, the secretary of human resources and members of the Assembly of the City of Ponce, and the city itself. The individual defendants bring this interlocutory appeal from the denial of so much of their motion for summary judgment as claimed absolute immunity for legislative activity. The individual defendants, as public officials, are entitled to an interlocutory appeal on the issue of immunity. *Mitchell v. Forsyth,* 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985).

As a result of the general election of 1988, the Popular Democratic Party ("PDP") gained control of the city government of Ponce, winning the mayoralty and a majority of the Assembly. The rival New Progressive Party ("NPP") had controlled the city for the previous twelve years, since the election of 1976. Upon taking office, the new administration determined that the city was in a financial crisis. One of the solutions proposed by the new mayor, the defendant Cordero, was the elimination of approximately 600 positions in the city's civil service. This was accomplished by passage by the Assembly of Ordinance # 43. Annexed to the ordinance was a listing of the positions eliminated by title. The annexed list contained not only the description of each eliminated position, however, but also the number which identified a specific position, and consequently identified particular employees.

Not surprisingly, given the effect of the ebb and flow of politics on public employment in Puerto Rico, as evidenced by the many cases on the subject before this court, the preceding twelve years of NPP dominance had produced a civil service with a high proportion of NPP adherents. The plaintiffs in this case are NPP supporters whose positions were eliminated by the operation of Ordinance # 43. They claim that the defendants' adoption of Ordinance # 43 was a device to eliminate NPP adherents from the civil service and to replace them with members of their own party, the PDP. It is now well settled that the First and Fourteenth Amendments protect public employees from being discharged solely because of their political affiliations. *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976); *Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980).

The defendants claim that Ordinance # 43 was a bona fide legislative attempt by the administration to rationalize the city's finances, that the lay-off of employees was according to seniority, and that employees were given "bumping" rights according to seniority. They also claim that the enactment of Ordinance # 43 was a purely legislative act and that consequently they are entitled to complete legislative immunity. In this interlocutory appeal we are concerned only with legislative immunity.

■ The defendants raised the issue of legislative immunity by motion for summary judgment. The district court ruled that legislative immunity applies to municipal officers, but that it is the nature of the particular act rather than the title of the office which governs whether immunity attaches. 764 F.Supp. 702. We agree. The court then concluded that the schedule of numbered positions attached to Ordinance # 43, and other evidence of concern with individual positions, caused the action to be administrative in nature, and not entitled to legislative immunity. Accordingly, the court denied the defendants' motion for summary judgment[1].

---

* Of the District of Massachusetts, sitting by designation.

1. At the same time the court also denied the plaintiffs' motion for summary judgment.

■ We agree that the motion should have been denied, because there was a genuine dispute of material fact, supported by evidence. In our opinion, however, the action of the district court in apparently concluding that the enactment of Ordinance # 43 was administrative as a matter of law was error, because there was still remaining a genuine dispute of fact as to the use that was made of the schedule of positions. The defendants maintain that they did not consider the party affiliation of individual employees but only the described positions in voting for the cut-back.

## DISCUSSION

■ The doctrine of absolute immunity provides a complete bar to civil liability for damages, regardless of the culpability of the actor, as opposed to the doctrine of qualified immunity, which provides a bar to liability for damages only where the immune actor can show that his actions were reasonable. *See, e.g., Imbler v. Pachtman,* 424 U.S. 409, 419 n. 13, 96 S.Ct. 984, 989 n. 13, 47 L.Ed.2d 128 (1976). Absolute immunity for legislative acts attaches to federal legislators, *see Doe v. McMillan,* 412 U.S. 306, 93 S.Ct. 2018, 36 L.Ed.2d 912 (1973), state legislators, *see, Tenney v. Brandhove,* 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951), and regional public officials, *see Lake Country Estates, Inc. v. Tahoe Regional Planning Agency,* 440 U.S. 391, 99 S.Ct. 1171, 59 L.Ed.2d 401 (1979). In *Lake Country,* the Court specifically declined to address the applicability of absolute legislative immunity at "the purely local level, as opposed to the regional level." *Id.,* 440 U.S. at 404, n. 26, 99 S.Ct. at 1179, n. 26.

Since *Lake Country,* eight circuit courts have addressed the issue of whether "purely local" absolute legislative immunity exists, each court finding that it does. *See Haskell v. Washington Township,* 864 F.2d 1266, 1277 (6th Cir.1988); *Aitchison v. Raffiani,* 708 F.2d 96, 98–100 (3d Cir.1983); *Reed v. Shorewood,* 704 F.2d 943, 952–53 (7th Cir.1983); *Espanola Way Corp. v. Meyerson,* 690 F.2d 827, 829 (11th Cir. 1982), *cert. denied,* 460 U.S. 1039, 103 S.Ct. 1431, 75 L.Ed.2d 791 (1983); *Kuzinich v. County of Santa Clara,* 689 F.2d 1345, 1349–50 (9th Cir.1982); *Hernandez v. Lafayette,* 643 F.2d 1188, 1193–94 (5th Cir. 1981), *cert. denied,* 455 U.S. 907, 102 S.Ct. 1251, 71 L.Ed.2d 444 (1982); *Bruce v. Riddle,* 631 F.2d 272, 274–80 (4th Cir.1980); *Gorman Towers, Inc. v. Bogoslavsky,* 626 F.2d 607, 611–14 (8th Cir.1980).

This circuit has not considered the issue since *Cobb v. Malden,* 202 F.2d 701, 706–07 (1st Cir.1953), in which Magruder, C.J., concurring, and Woodbury, J., dissenting, agreed that municipal officers were only entitled to qualified immunity. The opinion of the court by Judge Hartigan did not refer to the issue. In light of *Lake Country* and other developments in the law we revisit the whole subject.

■ In *Tenney, supra,* 341 U.S. at 377, 71 S.Ct. at 788, the Court embraced absolute legislative immunity because it helps guarantee that legislators are free to legislate, unfettered by fear of constituents' lawsuits. The Court reasoned that Congress, in enacting 42 U.S.C. § 1983, could not have meant to abrogate the doctrine, and held that state legislators are absolutely immune from § 1983 liability for actions "in the sphere of legitimate legislative activity." *Id.* at 376, 71 S.Ct. at 788. In *Lake Country, supra,* the Court extended absolute legislative immunity to non-elected officials of a regional land use planning agency for their legislative acts because "[*Tenney's* ] reasoning is equally applicable to federal, state, and regional legislators." *Id.,* 440 U.S. at 405 [2], 99 S.Ct. at 1179. Similarly, we see no material distinction between a local legislator and a regional

---

**2.** We note that the Court cites common law tradition to support absolute legislative immunity, *see Tenney,* 341 U.S. at 372–375, 71 S.Ct. at 786–788; *Lake Country,* 440 U.S. at 403, 99 S.Ct. at 1178, but has found no *requirement* that the specific type of legislative immunity had to have existed prior to congressional enactment of § 1983. *See Lake Country, supra* (no common law tradition of immunity for regional planners). *But cf. Burns v. Reed,* —— U.S. ——, 111 S.Ct. 1934, 1945, 114 L.Ed.2d 547 (1991) (Scalia, J., dissenting) (absolute prosecutorial immunity from § 1983 damages dependent on common law tradition prior to enactment of § 1983).

legislator with regard to a need for immunity. Indeed, as the fourth circuit pointed out in *Gorman Towers, supra,* "the nature of municipal government may make the need to quell a legislator's fear of personal retribution particularly compelling. 'Because municipal legislators are closer to their constituents than either their state or federal counterparts, they are, perhaps, the most vulnerable to and least able to defend lawsuits caused by the passage of legislation.' " *Id.,* 626 F.2d at 612 (citing *Ligon v. Maryland,* 448 F.Supp. 935, 947 (D.Md. 1977)). We agree.

Under current legal theory, immunity attaches or does not attach depending on what kind of action was performed rather than on who performed the action. In *Lake Country,* the Court held that to the extent that regional legislators act "in a capacity comparable to that of members of a state legislature, they are entitled to absolute legislative immunity from federal damages liability." *Id.,* 440 U.S. at 406, 99 S.Ct. at 1179.

The question remains whether the members of the Municipal Assembly of Ponce were acting in a capacity comparable to that of members of a state legislature when they enacted ordinance # 43.

■ In *Cutting v. Muzzey,* 724 F.2d 259 (1st Cir.1984), we explored the distinctions between actions legislative in nature, which are protected by absolute immunity, and those administrative in nature, which are not. We adopted an analysis under which a court should consider two tests when determining whether an act is legislative or administrative.

> The first test focuses on the nature of the facts used to reach the given decision. If the underlying facts on which the decision is based are "legislative facts," such as "generalizations concerning a policy or state of affairs," then the decision is legislative. If the facts used in the decision making are more specific, such as those that relate to particular individuals or situations, then the decision is administrative. The second test focuses on the "particularity of the impact of the state of action." If the action

involves establishment of a general policy, it is legislative; if the action "single[s] out specifiable individuals and affect[s] them differently from others," it is administrative.

*Id.* at 261 (citing *Developments in the Law—Zoning,* 91 Harv.L.Rev. 1427, 1510–11 (1978)). The district court reviewed the twin *Cutting* tests in light of the facts of the case and held that the enactment of the ordinance was an administrative act.

■ An act of a legislative body may be characterized as administrative as a matter of law where the relevant underlying facts are uncontroverted. *See Cutting, supra,* 724 F.2d at 261 (planning board's act directed at specific developer); *Vacca v. Barletta,* 933 F.2d 31, 33 (1st Cir.1991) (school committee's discussions on whether new positions for seven specific individuals could be funded). In the present case, however, the underlying facts are contested. The ordinance, which appears to be a legislative act on its face, is written as an across-the-board reduction of various *positions,* as opposed to specific *employees,* and it purports to be only one part of a reorganization plan for a municipality in financial crisis. The controversy stems from the parties' conflicting views as to the motivation for its enactment. The appellees contend that the neutral appearance of the ordinance is a ruse; that its purpose was actually to replace NPP supporters with PDP supporters, or at least to harm the NPP supporters, while the appellants deny that the ordinance was politically motivated.

The court recognized the existence of genuine issues of material facts in denying the *plaintiffs'* motion for summary judgment. It failed, however to recognize that some of the same disputed facts affect the ultimate determination of legislative immunity. In our view, the correct ground for denying the motion for summary judgment was that this area of disputed fact remains a genuine issue of material fact to be determined by trial.

As we read the record, some of the same evidence which bears on this issue will also bear on the merits of the plaintiffs' claim.

We leave it to the discretion of the district judge to determine the order in which these issues are to be presented to the trier of fact.

## CONCLUSION

The order denying the defendants' motion for summary judgment is *affirmed.* The case is remanded to the district court with directions to submit to the trier of fact the factual issues bearing on whether Ordinance # 43 is legislative or administrative.