**ORANGE LAKE ASSOCIATES,
INC., Plaintiff,**

v̇.

**Robert J. KIRKPATRICK, Robert A. Kunkel, Richard P. Herbert, Salvatore De Crosta, Charles P. Walczak and Thomas Fogarty, Defendants.**

No. 92 Civ. 0183 (GLG).

United States District Court,
S.D. New York.

July 7, 1993.

Thomas F. Cunningham, LaGrange, NY, for plaintiff.

Rider, Weiner, Frankel & Calhelha, P.C. by Moacyr R. Calhelha, Newburgh, NY, for defendants.

## OPINION

GOETTEL, District Judge.

This action involves a dispute between Plaintiff Orange Lake Associates, a residential development corporation, and Defendants who were members of the Town Board of the Town of Newburgh between 1987 and 1991. Plaintiff complains that the Board's treatment of its housing development proposal—the delays, the adoption of a new Master Plan for the Town and the eventual rezoning by the town obstructed the development of "affordable" housing in the Town and violated its rights under the Fourteenth Amendment of the United States Constitution. Plaintiff has brought this action for damages.

## I. STATEMENT OF THE FACTS

Plaintiff Orange Lake Associates, Inc., a New York Corporation formed in May 1990, acquired the right to develop several parcels of property (totalling some 150 acres) located within the Town of Newburgh, New York, adjacent to Orange Lake, a Lake sometimes used for recreational purposes located within the Town.[1] All this land was zoned "R3" at the time the contracts were first signed, meaning that it could support 12 residential units per acre. Down payments totalling $232,500 were made in connection with the acquisition of these development rights. Title was never closed on the contracts and Plaintiff has forfeited all rights to develop any of the properties for failure to make payments under the respective contracts. In addition, plaintiff secured a right of way on another parcel permitting access to Route 52, a state road intersecting its property.

Defendants, all present or former Town officials and/or members of the Town Board, who have been sued only in their individual capacities, maintain that from 1987 through 1990, the Town Board had under consideration several proposals to handle the Town's rapid population growth, including expansion of municipal water and sewer services, adoption of a Master Plan and amendments to the Town zoning ordinances. The Town Board is the governing body for the Town of Newburgh. In March 1988, the Town Board began a study of a proposal to increase its sewage treatment capacity by entering into a contract with the City of Newburgh to expand the City's existing sewage treatment

1. We note that plaintiff's attorney, Thomas F. Cunningham, is the sole shareholder of plaintiff. In addition, Plaintiff is the successor to Orange Lake Partners, Ltd. References to "Plaintiff" in this decision are intended to refer to each or both of these entities.

plant. The Town Board considered a Draft Environmental Impact Statement (EIS) prepared in connection with the sewage expansion proposal and approved the contract between the Town and City for expansion of the plant in October 1988. In 1988, the Town Board also retained a planning consultant to help prepare a new Master Plan for the Town of Newburgh.

In May 1989, Orange Lake Partners, a partnership between Cunningham and Fred Straub, presented an application to the Town's Planning Board for a residential condominium development to be called "The Commons at Orange Lake." The proposal called for the construction of over 500 townhouse and condominium units, representing an average of approximately 5 units per acre. Plaintiff alleges that in November 1987, at a meeting between Straub and then Town Supervisor Kirkpatrick wherein the idea for the Commons project was initially raised, defendant Kirkpatrick told Straub that if Plaintiff attempted to present to the Planning Board its proposal for the Commons Project at that time (including its own water and sewer systems in lieu of Town facilities) Kirkpatrick would personally make sure that the process was delayed "until hell freezes over." Defendant Kirkpatrick denies making this statement. In a letter accompanying the submission of the Environmental Assessment Form for the project, Cunningham stated that a "fair proportion of the proposed subdivision is directed toward moderately priced housing, which is expected to provide a first home for many of the young people entering the work force in our growing economy."

Plaintiff alleges that the passage of a Sewer Bond Draft EIS in July and August of 1988, which alluded to substantial expected growth in the area of the Commons Project, led it to believe that the Town Board would no longer obstruct its project. It submitted an application to the Planning Board on May 2, 1989. In July 1989, Orange Lake Partners made the first public presentation of its proposal for The Commons to the Planning Board. Defendants allege that at the meeting, the Board's attorney advised the developers that the rezoning under consideration by the Town might impact their development

plans. Board members also indicated their belief that the proper way to service a project of such size was by municipal sewers, not private, on-site treatment plants. The Board suggested that Orange Lake Partners inquire of the Town Board concerning extension of municipal services to the site. Plaintiff viewed this suggestion as an exercise in futility given that the Town Board had recently rejected the proposal to extend municipal services made by another proposed Town housing development, High Ridge, which was designed to include 300 single-family and two-family residences. Plaintiff alleges that it reaffirmed its commitment to dedicate a portion of The Commons to affordable housing.

One week later, on July 19, 1989, Master Plan Report No. 1 was presented to the Town Board by Garling Associates, the planning consultants retained by the Town. In the report, Garling recommended that the Town restrict sewer extensions to control development in more fragile environments such as the Orange Lake area. On July 24, 1989, the sponsors of The Commons formally requested an extension of municipal services to the lands forming the site of the proposed development. Defendants point out that no petitions from property owners who would be affected by such an extension were submitted in support of the request as required under New York Town Law § 191.

In September 1989, the Full Environmental Assessment Form of The Commons was accepted and the Planning Board referred Orange Lake Partners' application to Garling Associates for a review and report. At this point, plaintiff claims it was informed that the Town was contemplating rezoning the area proposed as the site for The Commons.

Toward the end of September 1989, Garling Associates issued its report identifying several deficiencies in the application including the lack of room for sewage treatment on-site and the present non-existence of adequate facilities off-site. The Garling report also reported that the proposal was inconsistent with current zoning ordinances which required multiple dwellings to be serviced by Town water facilities.

On October 20, 1989, Garling Associates submitted its Master Plan Report No. 2. The report recommended that: 1) the lands bordering Orange Lake be designated a critical environmental area, and 2) that infrastructure (meaning sewer services) be expanded, but only at "R2" densities (one unit per acre) to proposed developments at The Commons and High Ridge with the attendant costs to be borne by The Commons and High Ridge projects. The report also proposed lesser densities for those properties. Cunningham objected. Plaintiff submitted a corrected Environmental Assessment Form in May 1990.

Events accelerated in mid–1990. A February 1990 report from Garling Associates allegedly recommended extending municipal water and sewer to the west side of Orange Lake where The Commons would be located. The Town Board proposed an interim zoning plan which would have required minimum two-acre lots. Plaintiff considered this a stalling tactic to enable the zoning amendments to be completed. That same month, the Planning Board objected to the Town Board's proposed zoning plan, noting that this interim plan departed from the Master Plan Reports Nos. 1 and 2.

On June 18, 1990, the Town Board declared itself the "lead agency" for conducting an environmental review of the Town's proposed Master Plan. The Planning Board and the New York State Department of Environmental Conservation ("DEC") were advised to serve notice of any objections to the Town Board's resolution declaring itself lead agency. No objections were received from any of the interested agencies.

In July 1990, the Town Board rejected a motion to permit an extension of municipal water and sewer services to the High Ridge property. Also in July, the Planning Board declared itself the lead agency for an environmental review of The Commons project. At the end of December, the DEC commented on the proposal for The Commons. It pointed out that the project would require at least five permits and alerted the Planning Board of its concerns regarding the project's impact on wetlands, surface waters, and other properties.

Also in December 1990, the Town Board held a public meeting on the proposed Master Plan. Comments were made regarding various aspects of the Plan including the extension of municipal sewer services, more stringent environmental regulation of the lands adjacent to Orange Lake, affordable housing, and the effects on property values of reduced densities.

Plaintiff submitted to the Town Board in February 1991 an analysis of the Master Plan on affordable housing which concluded that the Town's capacity for affordable housing would be reduced by 6000 units under the plan. In March, the Town adopted the Master Plan prepared by Garling. As Plaintiff notes, the Planning Board commented at various times on the Master Plan and on the zoning ordinances themselves. The only suggestions made by the Planning Board on the Master Plan were an objection to soil-based zoning and general support for the extension of municipal sewer and water services to the west side of Orange Lake. Although the record is not clear as to whether or not the Town Board actually adopted the suggestions of the Planning Board, we note that the Town Board can comply with these suggestions even while rezoning the area which included Plaintiff's property for reduced density residential development. In April, the Town Board rejected the interim rezoning proposal, which covered the lands proposed for The Commons. After receiving a draft EIS from plaintiff in June 1991, the Planning Board voted unanimously to reject the draft on August 15, 1991 as incomplete. After the vote, Cunningham complained to the Planning Board that its planning consultant, Garling Associates, had conflicts of interest in reviewing plaintiff's submissions because they also rendered advice to the Town Board in connection with the Master Plan. Defendants allege that in November of 1991, Cunningham delivered to the individual defendants copies of a draft pleading he had prepared including many of the allegations set forth in the Second Amended Complaint. In December 1991, the Planning Board advised Cunningham that a new consultant had been retained to complete the environmental review of The Commons proposal. That same

month, the Town Board adopted amendments to the Town's zoning ordinances which reduced maximum densities for a number of properties within the Town, including the proposed site for The Commons.

The day following the adoption of the zoning amendments, but before their enactment, plaintiff commenced suit against defendants in their individual capacities in the New York State Supreme Court, Dutchess County. Plaintiff seeks damages including $255,000 in acquisition costs, $66,333 in professional fees, and $13 million in lost profits. Defendants removed the case to federal court based upon the federal claims raised by the plaintiff. Defendants presently move for summary judgment.

## II. DISCUSSION

### A. SUMMARY JUDGMENT

To prevail on a motion for summary judgment, the moving party must demonstrate "that there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

The court's function is not to resolve disputed issues of facts but solely to determine if such genuine issues of fact exist. All ambiguities must be resolved and all inferences drawn in favor of the party defending against the motion. *Rattner v. Netburn*, 930 F.2d 204, 209 (2d Cir.1991).

■ Summary judgment is also warranted where non-moving party has no evidentiary support for an essential element on which it bears burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Note, however, that where a defendant's intent and state of mind are implicated, summary judgment is ordinarily inappropriate. *See Donahue v. Windsor Locks Bd. of Fire Comrs.*, 834 F.2d 54, 59 (2d Cir.1987).

Plaintiff raises numerous arguments to oppose Defendants' summary judgment motion. We shall address each in turn.

### B. IMMUNITY

Defendants claim that they have absolute immunity from Plaintiff's claims against them in their individual capacities because the allegedly offending actions were undertaken by Defendants in their capacities as legislators.

### 1. *Acts of Municipal Legislators*

■ In support of their position, Defendants cite *Lake Country Estates, Inc. v. Tahoe Regional Planning Agency*, 440 U.S. 391, 99 S.Ct. 1171, 59 L.Ed.2d 401 (1979). *Lake Country* did not hold that absolute immunity extended to local legislators. In fact, the court · explicitly avoided that issue, saying: "Whether individuals performing legislative functions at the purely local level, as opposed to the regional level, should be afforded absolute immunity from federal damages claims is a question not presented in this case." , *Id.* at 404 n. 26, 99 S.Ct. at 1178 n. 26.

However, the issue was directly faced in *Dusanenko v. Maloney*, 560 F.Supp. 822 (S.D.N.Y.1983), *aff'd*, 726 F.2d 82 (2d Cir. 1984). Citing decisions of other circuits and a district court,[2] the court held that local legislators are absolutely immune from suit for actions taken in their legislative capacity. *Id.* at 826. The decision recounted the historical basis and function of immunity, outlined in *Tenney v. Brandhove*, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951), and *Lake Country*, in guaranteeing government officials the freedom to carry out their responsibilities according to their consciences and not due to the fear of legal action. *Id.* at 826–27. The court went on to say:

> Obviously, if the voters in this relatively small suburban and rural community think that a transitory majority of its Town Board dealt unfairly with [plaintiffs], it can vindicate their interests at the next Town election. Not every arguably wrong decision made by local legislators is susceptible of redress in the federal courts.

---

**2.** *Hernandez v. Lafayette*, 643 F.2d 1188 (5th Cir. 1981), *reh. denied*, 649 F.2d 336 (5th Cir.1981), *cert. denied*, 455 U.S. 907, 102 S.Ct. 1251, 71 L.Ed.2d 444 (1982); *Bruce v. Riddle*, 631 F.2d 272 (4th Cir.1980); *Gorman Towers, Inc. v. Bogoslavsky*, 626 F.2d 607 (8th Cir.1980); *Goldberg v. Spring Valley*, 538 F.Supp. 646 (S.D.N.Y.1982).

*Dusanenko*, 560 F.Supp. at 827. The reasoning underlying *Dusanenko* was recently adopted by the Second Circuit in *Goldberg v. Rocky Hill*, 973 F.2d 70, 72–73 (2d Cir.1992), wherein the court held that there is "no material distinction between the need for insulating legislative decision making at the state or regional level, and a corresponding need at the municipal level." *Id.* at 73. Accordingly, Defendants, as local legislators, have absolute immunity for actions taken in their legislative capacity.

## 2. *Acts within Defendants' legislative capacity*

■ Plaintiff argues that the acts of the Town Board members were not within their legislative capacity. In a case recently before us, *Moore v. Trippe*, 743 F.Supp. 201 (S.D.N.Y.1990), we faced claims which involved actions of a Town Board allegedly intended to prevent a community of Zen Buddhists from freely practicing their religion. In that case, we noted that any immunity for local legislators would, of course, be limited to "legislative" acts. *Id.* at 206. Other courts which recognize absolute immunity for local legislators state that "the recognition of immunity is not so broad as to shield local legislators when they are functioning in other than an traditional legislative capacity." *Goldberg v. Spring Valley*, 538 F.Supp. 646, 649 (S.D.N.Y.1982). More generally, federal courts have held that "the scope of immunity depends on the nature of the activity involved." *Haskell v. Washington Township*, 864 F.2d 1266, 1278 (6th Cir.1988); *Moore*, 743 F.Supp. at 207.

This leads us to the question of whether or not the Town Board of Newburgh was acting within its legislative capacity. Other courts have held that, in considering amendments to their zoning ordinances, town boards act in a legislative capacity. *See Wilmorite, Inc. v. Eagan Real Estate, Inc.*, 454 F.Supp. 1124, 1132 (N.D.N.Y.1977) *aff'd*, 578 F.2d 1372 (2d Cir.), *cert. denied*, 439 U.S. 983, 99 S.Ct. 573, 58 L.Ed.2d 655 (1978). The analysis we adopted in *Moore* was borrowed from *Cutting v. Muzzey*, 724 F.2d 259 (1st Cir.1984). We recognized that local legislative immunity may be lost if 1) the actions taken impact on particular individuals rather than on a community generally, or 2) the factors considered in adopting the legislation relate to specific individuals, instead of general policy implications. *Moore*, 743 F.Supp. at 207; *See also, Acevedo–Cordero v. Cordero–Santiago*, 958 F.2d 20, 23 (1st Cir.1992) (*quoting Cutting v. Muzzey*, 724 F.2d at 261).

In this case, Plaintiff is not challenging the adoption of the zoning amendments, but rather the adoption of the Master Plan. Even if we did not accept this as a legislative action *per se*, such action is clearly the formulation of a general policy for the Town of Newburgh involving several different properties and not only the Plaintiff. Therefore, by either analysis set forth in *Cutting v. Muzzey* (impact of the action or factors in adoption), the Town Board was plainly acting in a legislative capacity both in amending the zoning laws and in enacting a master plan.

Of course, if Defendants' only considerations made before passing the master plan were whether they could stop Plaintiff from proceeding with its project, Defendants might have forfeited their absolute immunity. *Moore*, 743 F.Supp. at 207. However, the present record only supports one conclusion, that their actions were not exclusively motivated by a desire to block the Orange Lake project. Not merely Plaintiff's parcel but almost the entire area surrounding Orange Lake, as well as several other tracts of land throughout the Town, were affected by the new master plan. Furthermore, Defendants have suggested other legitimate bases for their actions. Reports they had commissioned from Garling Associates identify the area of Plaintiff's proposed project as a "critical environmental area" and suggest lower densities for the area based on the local pollution levels and capacity of the Town to deliver municipal water and sewer facilities. Based on the record, we can only conclude that Defendants acted within their legislative capacity in adopting the Master Plan.

Plaintiff has also claimed that the Town Board failed to provide the required public notice, instead conducting meetings behind closed doors, and that they deliberately delayed the consideration and acceptance of his proposal for the Orange Lake project

through a variety of stalling mechanisms. If the Town Board intentionally delayed consideration of Plaintiff's proposal to prevent its acceptance before the rezoning and therefore not subject to a 'non-conforming use' exception to the newly promulgated zoning laws, this would undermine the arguments for applying absolute immunity for municipal legislators. Under the analysis in *Cutting v. Muzzey*, such tactics would not be legislative in nature because they would affect only the Plaintiff and its property, not the general community. If the Defendants intentionally delayed approval of the Orange Lake project to ensure it would not be accepted before the rezoning, this action would not be shielded by legislative immunity.

### 3. *Acts within the scope of Town Board authority*

■ Plaintiff also argues that the Town Board's adoption of the Master Plan was not within the scope of the Town Board's authority and therefore would not be protected by legislative immunity. Plaintiff claims that the Town Board acted outside of its legislative authority in adopting the Master Plan which changed the density requirements in the area of the Town containing the proposed Orange Lake project. Plaintiff notes that the court in *Dusanenko*, justifying a finding of absolute immunity for local legislators, stated that "[t]he actions complained of here were well within the scope of the Town Board's authority as outlined in the above quoted sections of the Town Law." *Dusanenko*, 560 F.Supp. at 827. The linchpin of Plaintiff's argument is that the Planning Board and not the Town Board has the *exclusive* power to prepare and adopt a master plan and, therefore, the Town Board must have been acting outside its authority in adopting a master plan.

Plaintiff concedes several points. Under Section 271(1) of New York Town Law[3], the Town Board can choose to appoint a Planning Board and can remove any member of the Planning Board for cause after a public hearing. If the Town Board chooses not to appoint a Planning Board, full and exclusive

power to prepare or change a master plan resides with the Town Board. Under § 272–a of New York Town Law, "the Planning Board may prepare and change, a comprehensive master plan for the development of the entire area of the Town."

Plaintiff's contention is that, once a Planning Board is created by the Town Board, it holds exclusive power to carry out the planning and development of a master plan according to its grant of power in § 275 of New York Town Law.

Section 275 states in part that: "The planning board shall have the full power and authority to make such investigations, maps and reports and recommendations in connection therewith relating to the planning and development of the town as to it seems desirable." Plaintiff reads "full power" to mean "exclusive power." This view is supported by some strong policy considerations. The reason planning boards gained popularity, as Plaintiff notes, was to free long-term community planning from short-term political considerations which may run against the best interests of the town. Requiring an elected political body to conform to a comprehensive land use plan prepared by a planning board immunizes it from such pressures. *See* Pl.'s Exhibit 4, *Reforming New York's Land Use Law: Developing a Balanced Approach for the 21st Century* 12–13. While this article and other sources cited by Plaintiff address the *custom* and the wisdom of placing control of plans with the Planning Board and control of ordinances with the Town Board, the Plaintiff has not produced anything which indicates that the Town Board, which created the Planning Board and retains the power to abolish it, has, as a matter of law, invested it with exclusive control over the *adoption* of the master plan. Plaintiff's only source to support its position is a passage from a 1938 book by Edward M. Basset entitled *The Master Plan* who was a special consultant to the State Planning Council which helped to draft the New York State Law. This source does not present Plaintiff's complicated contingent system of control over the master

---

**3.** We note that § 271, § 275 and § 276 of New York Town Law have been amended effective July 1, 1993. The current action, however, is governed by the version of the law in force at the time the events occurred and at the time of the filing of the action.

plan, but merely asserts that: "A master plan should not be passed by any legislative body." Edward M. Basset, *The Master Plan* 63 (1938). This is obviously inconsistent with the current law which, Plaintiff agrees, authorizes the Town Board to pass a Master Plan, at least if they have chosen not to create a Planning Board. Section 275 explicitly deals only with the *preparation* of the Master Plan.

Nor are we convinced by Plaintiff's reference to an unsuccessful effort to amend the language of § 272–a of the New York Town Law. *See* Pl.'s Exhibit 6 at 6–7. The amendment seeks to insure that, while either the Town Board or Planning Board could prepare a comprehensive plan, the Town Board of elected officials would be the body to pass the plan.[4] The current language of § 272–a does not mention passage of the Master Plan; it only states that the "planning board may *prepare* and *change*, a comprehensive master plan for the development of the entire area of the town...." N.Y.Town Law § 272–a (McKinney's 1987) (emphasis added). Plaintiff contends that such an effort to amend the Town Law to provide for joint preparation of the comprehensive master plan and for sole adoption authority in the Town Board proves that, in the absence of such an amendment, sole adoption authority resides in the Planning Board. We disagree. The legislators who attempted to amend § 272–a may have perceived the present law to provide for equal power in either the Town Board or the Planning Board to adopt a comprehensive master plan. They may have sought only to change the present law to provide that preparation

power should no longer reside exclusively in the Planning Board, intending the language on adoption of the comprehensive master plan to be a clarification of existing law. The proposed amendment to § 272–a may imply several different interpretations of the current § 272–a, many of them entirely consistent with Defendants' contention that they acted within the scope of their authority in adopting the Master Plan. In short, the existence of the proposed amendment to § 272–a supports no particular interpretation of the present law.[5]

The question of whether the Town Board acted within its authority in adopting the Master Plan is a legal issue. Under Sections 261 and 263 of New York Town Law, the Town Board is granted the power to adopt a Master Plan. Plaintiff contends that the existence of a Planning Board removes all power to adopt a Master Plan from the Town Board and places it exclusively with the Planning Board. This is nowhere stated in the law. We refuse to hold that the Town Board is stripped of all authority over adoption of the Master Plan upon appointment of a Planning Board.

Therefore, we hold that, under the facts of this case, Defendants were acting within the bounds of their authority and in their legislative capacity when they adopted the Master Plan which is the subject of Plaintiff's complaint. As such, they are protected from Plaintiff's suit by absolute legislative immunity.

## C. DELAY AND DUE PROCESS

### 1. *Delays by Defendants*

Plaintiff points to several actions by Defendants which he alleges were designed to de-

---

4. Plaintiff candidly sets forth a strong policy argument for locating the power to adopt a Master Plan in an elected body like the Town Board so that citizens will retain some degree of input over the implementation of such an important document and power will not reside exclusively with appointed officials not directly accountable to the public.

5. We note that, even if the Planning Board did have exclusive authority to prepare or change the master plan, it does not necessarily follow that the rezoning undertaken by the Town Board violated Plaintiff's constitutional rights. As the New York Court of Appeals held in *Asian Americans for Equality v. Koch*, 72 N.Y.2d 121, 531

N.Y.S.2d 782, 527 N.E.2d 265 (1988), "[a] well-considered plan need not be contained in a single document; indeed, it need not be written at all." *Id.* at 131, 531 N.Y.S.2d 782, 527 N.E.2d 265. Under the facts of this case, the review conducted by the Town (for example, the hiring of an outside consultant to conduct a review of existing and proposed Town development as well as the proposed Master Plan) and the actions taken by the Town Board based upon that review do not appear to be the type of arbitrary action detrimental to the community that would give rise to a violation of the guarantee of substantive due process found in the Fourteenth Amendment.

lay approval of the Orange Lake project, and thus infringed upon Plaintiff's due process rights. Examples of such tactics include 1) then Town Supervisor Kirkpatrick's statements to Straub that he would delay the project if proposed by Plaintiff in 1987; 2) the Town Board's proposal during 1989 and 1990 to rezone the northwest quadrant of the Town to require minimum two-acre lots; 3) the Planning Board's rejection of Plaintiff's Draft Environmental Impact Statement in August 1991 even though Plaintiff alleges that it was equally as complete as a recently accepted (and highly-praised) EIS from another corporation whose project had already received conditional approval; and 4) the Planning Board's requirements that Plaintiff erect expensive test wells even though the Planning Board had not conditionally approved the project. Some of the examples cited by Plaintiff pertain not to the Town Board, but to the Planning Board.

Unreasonable delays in approving projects has been considered appropriate grounds for injunctive relief in New York. *Pokoik v. Silsdorf,* 40 N.Y.2d 769, 390 N.Y.S.2d 49, 358 N.E.2d 874 (1976) (Village used "dilatory tactics to discourage petitioner from seeking the building permit to which he was entitled" to add several rooms to his house); *Huntington Ready–Mix Concrete, Inc. v. Southampton,* 112 A.D.2d 161, 491 N.Y.S.2d 383 (2d Dep't 1985) (zoning amendment should not apply to petitioners because they were denied their right to issuance of a permit to excavate gravel solely by the dilatory and unfair tactics of the Town Council); *C. DeMasco Scrap Iron & Metal Corp. v. Zirk,* 62 A.D.2d 92, 405 N.Y.S.2d 260 (2d Dep't 1978), *aff'd,* 46 N.Y.2d 864, 414 N.Y.S.2d 516, 387 N.E.2d 227 (1979) (Court refused to enforce zoning amendment against applicant because it was enacted while the Planning Board unreasonably delayed consideration of an as-of-right site plan application which was pending). Indeed, if the reason for the eventual denial of approval for Plaintiff's project was the existence of the recently passed zoning amendment and the reason the proposal was not approved before passage of the new amendment was delay on the part of the Defendants, and Defendants' delay was arbitrary or capricious, Plaintiff may conceivably have a protected property interest.[6]

Based on the pertinent standard for deciding summary judgment motions, we cannot grant Defendants' motion on the basis of whether or not they deliberately delayed Plaintiff's proposal in order that it would not be accepted before the new zoning laws went into effect.[7] The issue implicates the Defendants' state of mind and the intent behind a host of Town actions. "Cases in which the underlying issue is one of motivation, intent, or some other subjective fact are particularly inappropriate for summary judgment, as are those in which the issues turn on the credibility of the affiants." *Conrad v. Delta Air Lines, Inc.* 494 F.2d 914, 918 (7th Cir.1974); *See also, Donahue,* 834 F.2d at 59.

Defendant alleges that most of the delay attributed by Plaintiff to Defendants was actually Plaintiff's own delay in submitting his

---

**6.** This proposition is true only so far as can be inferred from the Second Circuit's decision in *RRI Realty Corp. v. Southampton,* 870 F.2d 911, 918 (2d Cir.1989). In that case, the court stated that:

> When a local regulator's discretionary decision to deny an application is not arbitrary or capricious, the plaintiff will usually be deemed not to have a sufficient entitlement to constitute a protected property interest. On occasion, however, ... the plaintiff may be deemed *not* to have a protected property interest in the requested permit, even in a case where the denial of the permit *is* arbitrary.

*Id.* Whether a protected property interest actually does exist where a local regulator's decision is arbitrary or capricious is a subject on which we offer no opinion.

**7.** We note that a limited delay intended to forestall acceptance of a proposal before pending zoning amendments took effect may be justified. Section 261 of New York Town Law has been interpreted by the Second Department to empower a Town Board to place a moratorium for six months on certain development within the Town while the master plan was being updated. The court held that the moratorium was a reasonable measure designed to temporarily halt development while the Town considered comprehensive zoning changes and was therefore a valid interim zoning measure. *Noghrey v. Acampora,* 152 A.D.2d 660, 543 N.Y.S.2d 530 (2d Dep't 1989). Whether or not the delay in which Defendants allegedly engaged would be justified involves further findings of fact and is not appropriately decided in a motion for summary judgment.

application and in responding to the inquiries of the Planning Board. Any delay attributable to the Plaintiff seriously weakens its argument that delays by Defendants were the cause of its project's denial of conditional approval before the passage of the zoning amendments. However, considering the record in the light most-favorable to the non-moving party, we feel that there remains a genuine issue of fact as to causation, and therefore summary judgment is not appropriate on this basis.

### 2. *Plaintiff's Property Interest*

However, even if Defendants' actions were arbitrary and capricious, Plaintiff can make out no due process claim unless it had some vested property interest in its development application. A developer has a property interest in its plan application if, at the time of submittal and absent any due process violations, there was a very strong likelihood that the application would have been granted. *Dean Tarry Corp. v. Friedlander*, 826 F.2d 210, 212 (2d Cir.1987); *See also, Yale Auto Parts, Inc. v. Johnson*, 758 F.2d 54 (2d Cir.1985). In *Dean Tarry,* the court dismissed the complaint because the Planning Board "possessed wide discretion" to reject the plaintiff's site plan. *Dean Tarry Corp.*, 826 F.2d at 213. While the court noted that "a theoretical possibility of discretionary action does not automatically classify an application for a license or certificate as a mere 'unilateral hope or expectation'", *Id.* at 212, the Second Circuit has also stated that if:

> federal courts are not to become zoning boards of appeals ..., the entitlement test of *Yale Auto Parts*—'certainty or a very strong likelihood' of issuance—must be applied with considerable rigor. Application of the test must focus primarily on the degree of discretion enjoyed by the issuing authority, not the estimated probability that the authority will act favorably in a particular case.

*RRI Realty Corp. v. Southampton,* 870 F.2d 911, 918 (2d Cir.1989). Under New York Town Law § 274–a, the Town Board is empowered to authorize the Planning Board to "review and approve, approve with modifications or disapprove site plans". N.Y.Town Law § 274–a (McKinney's 1987). Section 276 of the Town Law sets forth the Planning Board's powers to approve with or without modification or disapprove the preliminary and the final plat showing proposed subdivisions. This discretion located in the Planning Board suffices to defeat Plaintiff's claim that he has a vested property right to develop his property for multi-family housing.

> Even if in a particular case, objective observers would estimate that the probability of issuance was extremely high, the opportunity of the local agency to deny issuance suffices to defeat the existence of a federally protected property interest. The 'strong likelihood' aspect of *Yale Auto Parts* comes into play only when the discretion of the issuing agency is so narrowly circumscribed that approval of a proper application is virtually assured.

*RRI Realty,* 870 F.2d at 918.

Because Plaintiff did not have a vested property right in its development application due to the Planning Board's discretionary approval powers, it can make out no due process claim with regard to delay by Defendants in granting conditional approval to Plaintiff's project where such approval would have exempted Plaintiff from complying with the recently enacted rezoning.

### D. PROCEDURAL DUE PROCESS

Because Plaintiff had no vested property interest, any procedural due process claim would be barred. *See Azizi v. Thornburgh,* 908 F.2d 1130, 1134 (2d Cir.1990) (since plaintiffs had no right to an immigrant visa, they did "not have the requisite property interest necessary to prevail on their procedural due process challenge").

Even if Plaintiff had a vested property interest, in order to establish a procedural due process violation, a plaintiff must prove that he or she was deprived of "an opportunity ... granted at a meaningful time and in a meaningful manner for [a] hearing appropriate to the nature of the case." *Boddie v. Connecticut,* 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971); *Brady v. Town of Colchester,* 863 F.2d 205, 211 (2nd Cir.1988). The action of which Plaintiff complains is the

allegedly illegal adoption of the Master Plan. We must determine if Plaintiff had a "plain, adequate and complete" remedy available in state court. *Fair Assessment in Real Estate Association v. McNary*, 454 U.S. 100, 116, 102 S.Ct. 177, 186, 70 L.Ed.2d 271 (1981); *Moore*, 743 F.Supp. at 210. Plaintiff contends that claims regarding the zoning of property are not reviewable in a proceeding under Article 78 of N.Y.Civ.Prac.Law, citing *Voelckers v. Guelli*, 58 N.Y.2d 170, 176, 460 N.Y.S.2d 8, 446 N.E.2d 764 (1983). Plaintiff, misreads that case. Plaintiff's complaint is not with the substance of the zoning amendments, but with the procedure with which the Master Plan was adopted by the Town Board. In *Voelckers*, the court went on to say:

> The courts below have neither considered nor passed judgment on the wisdom or merit of the proposed zoning code amendment or otherwise usurped the legislative function of the board; their consideration extended only to the procedure by which the board acted.... That a determination of such a nature—addressing a question of procedure only ... is within the scope of judicial authority was established by this court in *Matter of Town of Smithtown v. Howell*, 31 N.Y.2d 365 [339 N.Y.S.2d 949, 292 N.E.2d 10 (1972).]

*Id.*, 58 N.Y.2d at 177, 460 N.Y.S.2d 8, 446 N.E.2d 764. Since Plaintiff's claim in this case is procedural, an article 78 hearing was available in state court and there can be no procedural due process violation.

Plaintiff contends that this is a suit for damages, not injunctive relief, and damages cannot be awarded as the sole relief in an Article 78 proceeding. *See Davidson v. Capuano*, 792 F.2d 275, 278 (2d Cir.1986). Plaintiff contends that "Defendants simply do not have the right to elect Plaintiff's remedies for him". What has happened in this case, however, is the reverse. Plaintiff is currently suing for damages because, even if the zoning were to be repealed, it does not have the financial ability to carry out the project. However, Plaintiff could have sued in state court for injunctive relief before it lost the capability to continue with its project. So long as Plaintiff had a reasonable

time in which to seek state relief, it cannot make a legitimate claim of due process violation because such a claim is no longer available. *Giglio v. Dunn*, 732 F.2d 1133, 1135 n. 1 (2d Cir.1984). Plaintiff cannot complain of the unavailability of remedies at law when its decision not to bring suit for injunctive relief in state court is the reason that injunctive relief would now be worthless to it. Plaintiff is free to ask for whatever remedy he pleases, but it cannot, after passing up available remedies, later claim a denial of its procedural due process.

Plaintiff contends that declaratory judgment proceedings were unavailable because it could not challenge anything in court until the zoning amendment was passed. Even this were true, and we express no opinion, the availability of a declaratory judgment proceeding in New York State courts to challenge the zoning amendment is constitutionally sufficient as a "plain, adequate and complete" remedy. *Fair Assessment in Real Estate Association*, 454 U.S. at 116, 102 S.Ct. at 186.

## E. EQUAL PROTECTION

Lastly, Plaintiff complains of a violation of the Equal Protection Clause of the Fourteenth Amendment. It argues that the decision by the Town Board to deny its project which offered "affordable housing" was racially discriminatory. We find this claim inflammatory and without merit. Plaintiff admits that there is no evidence of any racially motivated action. Furthermore, there has been no showing that the Town has tried to eliminate multi-family housing. The Town does, as New York Law demands, "provid[e] an array of opportunities for housing facilities." *Asian Americans for Equality*, 531 N.Y.S.2d at 790, 527 N.E.2d at 273. As the Supreme Court noted in *Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977), sometimes "a clear pattern, unexplainable on grounds other than race, emerges from the effect of the state action even when the governing legislation appears neutral on its face." (citations omitted) *Id.* at 266, 97 S.Ct. at 564. The pattern alleged by Plaintiff, the reduction of the amount of land

zoned for multi-family housing in a few areas of the Town, is certainly not the "stark" pattern considered necessary to find a violation in *Arlington Heights,* and Plaintiff admits to being able to show no other evidence in support of his claim. In particular, we note that 1) eight of the nine areas zoned for "R3" development in the Town remain entirely or substantially intact following the new zoning; and 2) the new zoning reduced densities for almost all of the property around Orange Lake, most of it not originally designated for "R3" densities. We grant Defendants' motion for summary judgment with regard to Plaintiff's claim of a violation of Equal Protection.

### F. ATTORNEY'S FEES

Defendants ask this court to impose sanctions against Plaintiff under Rule 11 of the Fed.R.Civ.P. While we do find for Defendants on their motion for summary judgment, Plaintiff had a legitimate complaint about Defendants' questionable conduct and we refuse to sanction it for pursuing those claims.

### III. CONCLUSION

Because Defendants' actions in adopting a Master Plan for the Town of Newburgh were undertaken by Defendants in their legislative capacity and because they were not outside the authority of their legislative grant of power under New York Law, Defendants are protected from claims arising from such actions by absolute legislative immunity. With respect to those claims, Defendants' motion for summary judgment is granted. With respect to Plaintiff's claims that Defendants arbitrarily and capriciously delayed consideration of Plaintiff's project, Defendants' motion is granted because Plaintiff had no vested property right in its development application. For the reasons discussed, we also grant Defendants' motion for summary judgment of Plaintiff's Procedural Due Process and Equal Protection claims. Defendants' motion for attorney's fees is denied. The Clerk shall enter judgment in favor of Defendants.