S e p t e m b e r 2 2 , 1 9 9 4
UNITED STATES COURT OF APPEALS

FOR THE FIRST CIRCUIT

No. 93-2376
No. 94-1183

OLGA J. NEGRON-GAZTAMBIDE,
Plaintiff, Appellant,

v.

ZAIDA HERNANDEZ-TORRES, ETC., ET AL.,
Defendants, Appellees.

ERRATA SHEET

The opinion of this Court issued on September 15, 1994, is
corrected as follows:

On cover sheet: change "sitting my designation" to "sitting
by designation."

UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 93-2376
No. 94-1183
OLGA J. NEGRON-GAZTAMBIDE,

Plaintiff, Appellant,

v.

ZAIDA HERNANDEZ-TORRES, ETC., ET AL.,

Defendants, Appellees.

APPEALS FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Juan M. Perez-Gimenez, U.S. District Judge]

Before

Selya, Circuit Judge,

Campbell, Senior Circuit Judge,

and Lagueux, District Judge.*

Carlos A. Del Valle Cruz, with whom Ricardo L. Torres Munoz,

was on brief for appellant.
Teresa Medina Monteserin, with whom Manuel D. Herrero

Garcia, and Miguel A. Pagan-Rivera were on brief for appellees.

September 15, 1994

*Of the District of Rhode Island, sitting by designation.

*Of the District of Rhode Island, sitting my designation.

CAMPBELL, Senior Circuit Judge. Olga Negron

Gaztambide ("Negron"), plaintiff-appellant, was employed by

the Legislative Service Office of the Commonwealth of Puerto

Rico as a librarian in the Legislative Library.1 In late

January or early February 1993, Negron was discharged from

her position. She learned of this action by way of a letter,

dated January 29, 1993, signed by Nelida Jimenez Velazquez

("Jimenez"), Director of the Legislative Service Office.2

On June 22, 1993, Negron sued Jimenez in the United

States District Court for the District of Puerto Rico. Also

named as defendants were Zaida Hernandez Torres

("Hernandez"), President of the House of Representatives of

the Commonwealth of Puerto Rico, and Roberto Rexach Benitez

("Rexach"), President of the Senate of the Commonwealth of

Puerto Rico. Negron claimed that she had been dismissed (1)

because of her political affiliation with Puerto Rico's

1. The purpose of the Legislative Library is "to make all
kinds of basic reference material available to the members of
[Puerto Rico's] Legislative Assembly and to persons in the
community who may be interested in gathering data on the
legislative proceedings and other governmental activities."
1964 P.R. Laws Act No. 59 (Statement of Motives).

2. Pursuant to P.R. Laws Ann. tit. 2, 424 (1982):

All officers and employees of the
Legislative Library shall form part of
the personnel of the Legislative Service
Office and shall be appointed according
to the procedure established for the
appointment of said personnel.

-3-

Popular Democratic Party in violation of the First, Fifth,

and Fourteenth Amendments of the United States Constitution

and 42 U.S.C. 1983 (1988), (2) without a hearing in

violation of the Due Process Clause of the Fifth and

Fourteenth Amendments, and (3) in disregard of her

handicapped condition in violation of the Americans with

Disabilities Act, 42 U.S.C. 12101-12213 (Supp. IV 1992).

On August 5, 1993, Hernandez and Jimenez moved to

dismiss Negron's complaint for lack of jurisdiction. They

argued that their decision to discharge Negron was a

legislative act protected by the Legislative Immunity

Doctrine.3 See U.S. Const. art. I, 6 (Speech or Debate

Clause); P.R. Const. art. III, 14. On October 14, 1993,

Negron moved for an extension of time within which to oppose

defendants' motion to dismiss. Her motion was denied. On

October 18, 1993, the district court issued the following

order:

Before the Court is the defendants'
unopposed motion to dismiss for lack of
jurisdiction. After fully reading the
same, the Court finds itself in accord
with the legal arguments proffered by the
defendants in support of their motion.
WHEREFORE, for the reasons stated in
defendants' motion, this case is hereby

3. "The doctrine of absolute [legislative] immunity provides
a complete bar to civil liability for damages, regardless of
the culpability of the actor . . . ." Acevedo-Cordero v.

Cordero-Santiago, 958 F.2d 20, 22 (1st Cir. 1992).

-4-

DISMISSED pursuant to Fed. R. Civ. P.
12(b)(6).4 (footnote supplied).

Judgment was entered on October 29, 1993. Thereafter, on

November 2, 1993, Negron filed a motion to alter or amend the

judgment pursuant to Fed. R. Civ. P. 59(e). This motion was

supplemented by Negron on November 4, 1993, subsequently

opposed by defendants, and ultimately denied by the district

court on November 17, 1993. This appeal followed on November

29, 1993.5 We do not disturb the district court's dismissal

of Negron's claims under the Due Process Clause and the

Americans with Disabilities Act, but we reverse the dismissal

of her 1983 claim.

I.

Although defendants ostensibly brought their motion

to dismiss under Fed. R. Civ. P. 12(b)(1) ("lack of

4. The district court observed that defendants' motion was
unopposed. Pursuant to Local Rule 311.5 of the United States
District Court for the District of Puerto Rico, "[i]f the
respondent opposes a motion, [she] shall file a response
within ten (10) days after service of the motion, including
brief and such supporting documents as are then available. .
. ." Failure to so respond renders a party susceptible to
involuntary dismissal, pursuant to Fed. R. Civ. P. 41(b), for
failure to prosecute. See Local Rule 313.3 (D.P.R.). Here,

however, the district court dismissed for failure to state a
claim, not failure to prosecute, and neither the court nor
appellees suggest that Negron has waived her right to appeal
from the dismissal by initially failing to oppose Hernandez
and Jimenez's motion.

5. Negron filed a second notice of appeal on January 24,
1994, because her Rule 59(e) motion, while denied on November
17, 1993, was not actually entered in the docket until
January 12, 1994.

-5-

jurisdiction over the subject matter"), the district court

granted it pursuant to Fed. R. Civ. P. 12(b)(6) ("failure to

state a claim upon which relief can be granted"). For

purposes of this appeal, however, we need not decide whether

defendants' motion is more appropriately cast under one rule

or the other. In either case, we review the district court's

decision granting defendants' motion to dismiss de novo.

Vartanian v. Monsanto Co., 14 F.3d 697, 700 (1st Cir. 1994).

"We take the allegations of the complaint to be true, and we

will not affirm the district court's dismissal unless it

appears beyond doubt that the plaintiff cannot prove any set

of facts in support of [her] claim which would entitle [her]

to relief." Carney v. Resolution Trust Corp., 19 F.3d 950,

954 (5th Cir. 1994); e.g., Vartanian, 14 F.3d at 700.

Negron's complaint contained the following relevant

allegations. Negron began her employment with Puerto Rico's

Legislative Library on July 14, 1967, as a Librarian Grade

II. She worked continuously for the library until she

learned of her dismissal by way of a letter, dated January

29, 1993, signed by Nelida Jimenez Velazquez, Director of the

Legislative Service Office. During the period of her

employment, Negron's job performance was exemplary. At the

time of her discharge, she was a Librarian Grade V.

On November 4, 1992 prior to Negron's dismissal

Zaida Hernandez Torres and Roberto Rexach Benitez, members

-6-

of Puerto Rico's New Progressive Party, were elected to

Puerto Rico's House of Representatives and Senate,

respectively. On or about January 11, 1993, Hernandez was

elected President of the House of Representatives and Rexach

was chosen to be President of the Senate. On that same date,

Hernandez and Rexach appointed Jimenez, also a member of the

New Progressive Party, Director of the Legislative Service

Office. Less than three weeks later, Negron, who is

affiliated with Puerto Rico's Popular Democratic Party, was

discharged. She was replaced by a New Progressive Party

activist.

II.

Negron argues on appeal that, contrary to the

district court's conclusion, defendants' decision to

discharge her was not a legislative act entitled to absolute

legislative immunity from damages under 1983. We agree.

It is established that "state legislators enjoy

common-law immunity from liability for their legislative acts

. . . that is similar in origin and rationale to that

accorded Congressmen under the Speech or Debate Clause."

Supreme Court of Va. v. Consumers Union of the United States,

Inc., 446 U.S. 719, 732, 100 S. Ct. 1967, 64 L. Ed. 2d 641

(1980). In Tenney v. Brandhove, 341 U.S. 367, 71 S. Ct. 783,

95 L. Ed. 1019 (1951), the United States Supreme Court

"concluded that Congress did not intend 1983 to abrogate

-7-

the common-law immunity of state legislators." Supreme Court

of Va., 446 U.S. at 732. Nevertheless, the Supreme Court

"has been cautious in recognizing claims that government

officials should be free of the obligation to answer for

their acts in court." Forrester v. White, 484 U.S. 219,

223-24, 108 S. Ct. 538, 98 L. Ed. 2d 555 (1988). Legislators

are absolutely immune only from claims that stem from their

legitimate legislative activities. E.g., Supreme Court of

Va., 446 U.S. at 732; Roberson v. Mullins, No. 93-1618,

F.3d , 1994 WL 322560, at *1 (4th Cir. July 8, 1994); see

Forrester, 484 U.S. at 227 ("[I]mmunity is justified and

defined by the functions it protects and serves, not by the

person to whom it attaches." (emphasis in original));

Acevedo-Cordero v. Cordero-Santiago, 958 F.2d 20, 23 (1st

Cir. 1992) ("Under current legal theory, immunity attaches or

does not attach depending on what kind of action was

performed rather than on who performed the action."). Acts

undertaken by legislators that are administrative in nature

do not "give rise to absolute immunity from liability in

damages under 1983." Forrester, 484 U.S. at 229; Acevedo-

Cordero, 958 F.2d at 23; Gross v. Winter, 876 F.2d 165, 170-

73 (D.C. Cir. 1989).

The issue is thus whether defendants were acting in

a legislative or administrative capacity when they discharged

-8-

Negron. In Cutting v. Muzzey, 724 F.2d 259 (1st Cir. 1984),

we spoke of

two tests for distinguishing between
legislative and administrative activity.
The first test focuses on the nature of
the facts used to reach the given
decision. If the underlying facts on
which the decision is based are
"legislative facts," such as
"generalizations concerning a policy or
state of affairs," then the decision is
legislative. If the facts used in the
decisionmaking are more specific, such as
those that relate to particular
individuals or situations, then the
decision is administrative. The second
test focuses on the "particularity of the
impact of the state action." If the
action involves establishment of a
general policy, it is legislative; if the
action "single[s] out specifiable
individuals and affect[s] them
differently from others," it is
administrative.

Id. at 261 (quoting Developments in the Law Zoning, 91 Harv.

L. Rev. 1427, 1510-11 (1978)); e.g., Roberson, No. 93-1618,

F.3d , 1994 WL 322560, at *2 ("[A] local governmental

body . . . acts in a legislative capacity when it engages in

the process of `adopt[ing] prospective, legislative-type

rules.'" (quoting Front Royal & Warren County Indus. Park

Corp. v. Town of Front Royal, 865 F.2d 77, 79 (4th Cir.

1989))). Under either of these purported tests, defendants'

decision to replace Negron a member of the Popular

Democratic Party with a New Progressive Party activist

was administrative. E.g., Forrester, 484 U.S. at 229

(holding that state-court judge acted in an administrative

-9-

capacity when he demoted and discharged a subordinate

probation officer, allegedly on account of her sex, and,

therefore, was not absolutely immune from a suit for damages

under 1983); Roberson, No. 93-1618, F.3d , 1994 WL

322560, at *2 (holding that members of a county board did not

act in a legislative capacity when they terminated the public

works superintendent, allegedly on account of his political

affiliation, and, therefore, were not absolutely immune from

a suit for damages under 1983); Gross, 876 F.2d at 170-73

(holding that councilmember acted in an administrative, not

legislative, capacity when she discharged a legislative

researcher, allegedly on account of her religion, and,

therefore, was not absolutely immune from a suit for damages

under 1983); c.f. Rateree v. Rockett, 852 F.2d 946, 950

(7th Cir. 1988) (finding absolute legislative immunity under

the circumstances, but agreeing with plaintiffs "to the

extent that employment decisions generally are

administrative, regardless [of] whether [they are] made by a

judge or a legislature"). The district court erred,

therefore, when it dismissed Negron's 1983 claim on the

grounds that defendants were shielded by absolute legislative

immunity.6

6. We do not reach the issue of whether defendants may be
entitled to qualified immunity, see Forrester, 484 U.S. at

230; Gross, 876 F.2d at 173 n.12, "which provides a bar to

liability for damages only where the immune actor can show
that his actions were reasonable," Acevedo-Cordero, 958 F.2d

-10-

III.

The district court's dismissal of Negron's 1983

claim is reversed, and we remand for further proceedings

consistent with this opinion. As Negron does not argue on

appeal that the district court erred in dismissing her claims

brought pursuant to the Due Process Clause and the Americans

with Disabilities Act (i.e., Counts 2 and 3), we do not

disturb the district court's dismissal of those counts.

So ordered.

at 22.

-11-